**CREST TRUCK LINES, INC., Plaintiff,**

v.

**CORNUCOPIA NATURAL FOODS, INC., Defendant.**

**Civ. A. No. 90–0416 P.**

United States District Court, D. Rhode Island.

Aug. 10, 1992.

Charles J. McGovern, Phillip W. Noel, Providence, R.I., for plaintiff.

Michael Anthony Ursillo, Frank J. Williams, Providence, R.I., for defendant.

ORDER

PETTINE, Senior District Judge.

The Findings and Recommendation of United States Magistrate Judge Jacob Hagopian filed on June 29, 1992 in the above-captioned matter are accepted pursuant to Title 28 United States Code § 636(b)(1).

## FINDINGS AND RECOMMENDATION

HAGOPIAN, United States Magistrate Judge.

The instant matter is before the Court on the Defendant's motion to stay the litigation of the claims contained in the Plaintiff's Complaint and remand the matter to the Interstate Commerce Commission (ICC). My findings and recommendations are proposed for consideration and action by the Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rules of Court 32(c)(2).

### Statement of the Claim

Plaintiff Crest Truck Lines, Inc. (Crest) brought suit against Defendant Cornucopia Natural Foods, Inc. (Cornucopia) to recover payment for transportation services it allegedly provided the Defendant. The Plaintiff seeks recovery from the Defendant based on rates created in tariff ICC HGB 100. A tariff is a legal agreement filed with the ICC which establishes the rate which a carrier may charge the public for interstate transportation services.

### Statement of the Facts

Common carriers who provide transportation or services to the public may only charge rates "contained in a tariff that is in effect." 49 U.S.C. § 10761(a). The tariff must be published and filed with the ICC for it to be effective. 49 U.S.C. § 10762(a). The rate contained in the tariff is referred to as a filed rate.

Plaintiff Crest filed tariff ICC CEFM 405 with the ICC. In this tariff, the Plaintiff attempts to enforce the rates established by tariff ICC HGB 100. This tariff established rates based on the mileage between the origin and the destination of the transportation or services provided. Plaintiff Crest did *not* file tariff ICC HGB 100. The Plaintiff nonetheless claims that the Defendant is obligated to pay Plaintiff Crest rates created in tariff ICC HGB 100.

The Defendant identifies numerous grounds as to why Plaintiff Crest can not enforce rates established in tariff ICC HGB 100. The Defendant argues that Plaintiff Crest can not charge rates created in the tariff because it did not properly file tariff ICC HGB 100 with the ICC. The Defendant asserts that the rates are unreasonable and that the Plaintiff's practice of charging truckload rates to less than truckload shipments is an unreasonable practice in violation of 49 U.S.C. § 10701(a). The Defendant further claims that the Plaintiff was a contract carrier as opposed to a common carrier. Generally, carriers are compelled to charge rates contained in their tariffs filed with the ICC. This has been referred to as the filed rate doctrine. The ICC has, however, exempted "contract carriers" from the purview of the filed rate doctrine. If certain requirements are met, the "contract carrier" is entitled to payment of rates which the carrier and shipper negotiate strictly between themselves, with no involvement by the ICC. The rates contained in tariff ICC HGB 100, the Defendant argues, are not the rates Plaintiff Crest and Defendant Cornucopia negotiated.

### Motion Before the Court

Defendant Cornucopia moves the court to stay this litigation and remand the matter to the Interstate Commerce Commission. The Defendant asserts, the ICC retains primary jurisdiction as to issues concerning: (1) rate reasonableness, (2) nonparticipation in tariff ICC HGB 100, (3) application of truckload rates to less than truckload shipments and (4) common versus contract carriage.

### Discussion

■ For the reasons stated below, I find that the ICC has primary jurisdiction as to whether Plaintiff Crest's rates are reasonable, as to whether Crest participated in the listed mileage guide and as to whether the application of truckload rates to less than truckload shipments is a reasonable practice. Thus, I recommend that the litigation of these claims be stayed and that these claims be remanded to the ICC for adjudication.

The U.S. Court of Appeals for the First Circuit held in *Delta Traffic Serv., Inc. v. Transtop. Inc.* that "where the reasonableness of the filed rate is at issue in a carrier's rate-collection suit, the court should refer the matter to the ICC and apply the

ICC's result." 902 F.2d 101, 104 (1st Cir. 1990).

The *Delta Traffic* opinion indicates that the regulatory agency has primary jurisdiction over not only the issue of rate reasonableness but over other matters as well.[1]

The doctrine of primary jurisdiction requires a court to suspend its process and refer a matter to an administrative body whenever enforcement of a judicial claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [that] administrative body.

*Delta Traffic,* at 103 (quoting *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)).

The justification for favoring referral to the ICC is to enable an "experienced body" the opportunity to handle complex matters which the Court is not as well equipped to address and to maintain uniformity in administrative decisionmaking. *Western Pacific,* 352 U.S. at 64–65, 77 S.Ct. at 165.

These considerations not only require remanding the issue as to rate reasonableness to the ICC, but that the issues of whether Plaintiff Crest participated in the listed mileage guide and whether the application of truckload rates to less than truckload shipments is a reasonable practice be remanded as well.

A ruling by this Court requires a comprehensive understanding of the ICC regulations. The regulations contain language in "a peculiar or technical sense" for which "extrinsic evidence is necessary to determine their meaning or proper application." *Western Pacific,* 352 U.S. at 66, 77 S.Ct. at 166. Furthermore, the dispute cannot be settled without an "acquaintance with many intricate facts of transportation ... and such acquaintance with many common-ly to be found only in a body of experts." *Great Northern Railway v. Merchants Elevator Co.,* 259 U.S. 285, 291–92, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922).

In order to determine whether Plaintiff Crest properly referenced the listed mileage guide in its own filed tariff the Court would need to familiarize itself with the language and "terms of art" contained in the regulations. More importantly, the Court would be required to comprehend the purposes, policies and expectations of the tariff system in order to effectuate its goals. This dispute calls for more than a mere "construction" of the regulations. Instead, it requires the Court to supply meaning to the system. The agency creating the regulations is the body that should determine their meaning.

Similarly, for the Court to pass upon the issue of application of truckload rates to less than truckload shipments, it would need to examine and comprehend the policy and factors the ICC considered when distinguishing truckload shipments and less than truckload shipments. This also is an issue that "ha[s] been placed within the special competence" of the Interstate Commerce Commission. *Western Pacific,* 352 U.S. at 63–64, 77 S.Ct. at 165.

Until a recent decision by the ICC[2], the agency had not issued an opinion regarding the practice of referencing other tariffs. Thus, the current dispute is not one which the agency has addressed in its entirety. The ICC should be permitted to exercise its primary jurisdiction in order to allow the agency the opportunity to formulate a definitive stance.

Finally, the goal of uniformity in administrative decisionmaking also militates in favor of referring this matter to the ICC. As the Defendant points out in its memorandum, the issue as to whether a tariff

---

1. Plaintiff Crest, citing the Fourth Circuit Court of Appeals decision in *In Re Carolina Motor Exp., Inc.,* 949 F.2d 107 (4th Cir.1991), relies upon authority and policy which the First Circuit Court of Appeals explicitly denounced in *Delta Traffic.* (We should have thought that courts universally accepted [remanding matters requiring the attention of an expert body] had we not found a recent Fifth Circuit case to the contrary, *Supreme Beef Processors, Inc. v. Yaquinto,* 864 F.2d 388 (5th Cir.1989)). *Delta Traffic,* at 105.

2. Jasper Weinman & Son, et al. and Overland Express, Inc., ICC NO. 40510. This recent decision by the ICC apparently favors Defendant Cornucopia, the moving party.

may rely on rates formulated in an unrelated tariff is pending in numerous lawsuits. Remand of this matter will enable the ICC to apply the regulations in a uniform manner to the many disputes.

The rationale of the *Delta Traffic* opinion was succinctly restated by U.S. District Judge Lagueux in the matter of *Crest Truck Lines, Inc. v. Lumex, Inc.,* C.A. No. 90–0424 (D.R.I. Oct. 15, 1991).

Referral is good policy. As the First Circuit explains, a stay of the action ... will advance, rather than retard, primary jurisdiction policies. This Court should stay out of the business of setting rates, an endeavor for which it is ill-prepared. The ICC has the tools and the skills necessary for evaluating the reasonableness of the rates.

In this case, considerations inherent in the doctrine of primary jurisdiction, "considerations of uniformity in regulation and of technical expertise," require the Court to stay the instant claim and defer the matter to the ICC. *Nader v. Allegheny Airlines,* 426 U.S. 290 at 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1975). Accordingly, I recommend that the Defendant's motion to stay and remand to the ICC on the issues of rate reasonableness, non-participation in tariff ICC HGB 100, and application of truckload rates to less than truckload shipments be granted.

█ The Defendant also moves this Court to stay and remand the issue of whether a contract or common carriage existed. A common carriage confines the carrier to charge for transportation services provided rates contained in its tariff filed with the ICC. A contract carriage permits the carrier to negotiate rates with the shipper if certain requirements are met. One of these requirements is that the contract carriage be written.

A court is not required to refer a matter to the ICC "if that body, in prior releases or opinions has already construed the particular tariff at issue or has clarified the factors underlying it." *Western Pacific,* 352 U.S. at 69, 77 S.Ct. at 168.

Plaintiff Crest argues that since there is no written contract, a remand to the ICC is unnecessary because the agency has made clear its position: A contract carriage must be written.

The Defendant argues that the ICC's position is not clear as to whether a written contract is required. Defendant Cornucopia relies on a recent statement by the ICC: "the Commission does not invalidate contracts for contract carriage, and it is not our policy to find a lack of contract carriage based on simple, technical oversights or omissions." ICC, Ex Parte No. MC–198, Contracts for Transp. of Property 5 (Feb. 20, 1991).

The issue presented is whether this statement is "sufficiently ambiguous" as to whether the ICC requires a written contract to necessitate remanding the matter to the ICC. *Atlantis Exp. v. Standard Transp. Services,* 955 F.2d 529 (8th Cir. 1992).

The Eighth Circuit in *Atlantis* held that this recent statement by the ICC was "sufficiently ambiguous" and therefore remanded the matter to the ICC. However, the Court noted that the party moving for remand to the ICC made "a sufficient threshold showing of contract carriage to justify referral." *Id.* at 534 n. 10. The moving party presented evidence demonstrating that all the requirements needed to establish a contract carriage, other than a written contract, existed.

Defendant Cornucopia, the moving party, has not made any showing that a contract carriage exists. Defendant has not demonstrated that resolution of the common versus contract carriage issue requires more than simply applying a clear test enunciated by the ICC. Thus, remand is unnecessary. The litigation of this issue should be stayed, however, pending adjudication of the other issues before the ICC.

*Recommendation*

Accordingly, I recommend that the Defendant's motion to stay litigation of these claims in the U.S. District Court for the state of Rhode Island be granted and that the Defendant's motion to remand to the ICC be granted as to the issues of rate reasonableness, non-participation in tariff

ICC HGB 100, and application of truckload rates to less than truckload shipments. I recommend that the Defendant's motion to remand on the issue of contract versus common carriage be denied.[3]

June 29, 1992

3. Any objection to this Recommendation must be specific and must be filed with the clerk of Court within ten (10) days of the receipt of the Recommendation. Rule 32, Local Rules of Court; Rule 72(b), Fed.R.Civ.P. Failure to timely file specific objections to the magistrate judge's Recommendation, Findings or Report is a waiver of the right to review by the District Court. *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).