**David E. LEWIS, as Trustee of the Estate of Edson Express, Inc., Debtor, Plaintiff,**

v.

**SHEPARD'S/McGRAW–HILL, INC., Defendant.**

**Civ. A. No. 93–F–173.**

United States District Court, D. Colorado.

May 24, 1993.

Lee E. Lucero, Lucero & Associates, P.C., Aurora, CO, for plaintiff.

Gordon G. Greiner, David D. Powell, Jr., Holland and Hart, Denver, CO, for defendant.

## ORDER REGARDING STAY OF PROCEEDINGS

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving liability for payment due for transportation of goods in interstate commerce. This matter comes before the Court on Defendant's motion for stay and reference to the Interstate Commerce Commission ("ICC"). Jurisdiction is based on 28 U.S.C.A. § 1331. The litigants have fully briefed the matter. For the reasons stated below, the motion is GRANTED.

### I.

From approximately August 30, 1988 through January 17, 1991, Debtor Edson Express, Inc. ("Edson") provided transportation services at the request, or for the benefit, of Defendant Shepard's/McGraw–Hill, Inc. ("Shepard's") as a common carrier by motor vehicle in interstate commerce.[1] Edson operated under authority issued by the ICC. During the period Edson provided transportation services, Edson had various tariffs on file with the ICC; those tariffs had been accepted for filing by the ICC and had been allowed to become effective. Edson billed Shepard's for its services and Shepard's paid the bills without question.

On January 22, 1991, Edson filed for Chapter 11 bankruptcy protection. Plaintiff, David E. Lewis, was named trustee of Edson's estate. Lewis hired a collection and audit service to determine whether Edson had complied with the Interstate Commerce Act. 49 U.S.C.A. § 10761 (West Supp.1992). According to Lewis, the audit revealed that Shepard's had paid less than the required rates as provided for in the tariff rates Edson had on file with the ICC. The auditors determined that the truckload rate for the commercial zone of Chicago, Illinois was inapplicable to shipments to or from Melrose Park, Illinois and concluded that Shepard's should have paid the higher LTL[2] rate. The auditing firm issued corrected billing statements to Shepard's but Shepard's made no payment.

Shepard's disputes the assertion that it paid less than the appropriate rate. Specifically, Shepard's disagrees that it owed the higher LTL rate. Shepard's asserts the issues in this lawsuit are: (1) whether the higher LTL rate is reasonable under 49 U.S.C. § 10701(a); (2) whether requiring Shepard's to pay the higher of the two tariff rates constitutes an unreasonable practice in violation of the same statutory section; and (3) which tariff rate actually applies. Shepard's contends these issues are within the primary jurisdiction of the ICC and therefore ought be referred to the ICC.

### II.

The question before the Court for purposes of this motion is whether the issues of this case can be said to incorporate the reasonableness of Edson's filed rate. If reasonableness is an issue and if it is a defense to a rate action, then proceedings must be stayed while Shepard's applies to the ICC for a

---

1. All factual recitations in this order are contained in the litigants' pleadings.

2. The parties do not define this acronym for the Court but its meaning appears to be immaterial for the purposes of this order.

ruling. Edson argues that its complaint shows that only the *violation* of the filed rate, not its reasonableness, is the sole issue before the Court. Shepard's contends that insofar as rate unreasonableness is a defense to a claim of rate violation, reasonableness is an issue and the ICC is the appropriate forum for its resolution.

## A. Rate Reasonableness

■ The reasonableness of a rate or practice of a carrier can only be decided by the ICC. *Great Northern Railway Co. v. Merchant's Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). The reasonableness of such a rate or practice is the type of issue within the special competence of an administrative body under the doctrine of primary jurisdiction. *See United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

■ In a filed rate action, the rule against deviations from a filed and published tariff is "undeniably strict." *Milne Truck Lines, Inc. v. Makita U.S.A., Inc.*, 970 F.2d 564, 569 (9th Cir.1992). However, the filed rate doctrine also provides that rates are not enforceable if they are unreasonable. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). In his brief, Lewis consistently misses this point, arguing that the Court need only find Shepard's failed to pay the rates Edson now demands. However, any payment of Edson's revised rates begs the question of whether those rates are reasonable. And once reasonableness is made an issue, we must address whether it can be asserted as a defense or, in this case, a counterclaim.

■ The Supreme Court very recently settled the greater part of this issue. In *Reiter v. Cooper*, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1992), the Court held that while technically the unreasonableness of a tariff rate may not be asserted as a 'defense' to an action to recover charges based on that rate, "a defendant having a cause of action against a plaintiff may—indeed, often must—assert that cause of action as a counterclaim." *Id.* at ——, 113 S.Ct. at 1217 (noting that defendant's counterclaim need only relate to the same shipments for which plaintiff seeks to collect).[3] The Court stated it makes no difference that the defendants mistakenly denominate their counterclaim as a defense; Federal Rule of Civil Procedure 8(c) provides that a district court, "if justice so requires, shall treat the pleading as if there had been a proper designation." *Id.* One might also come to the same conclusion based simply upon the confusion that has long prevailed in this area of law.

The Court also clarified two other issues regarding referral to the ICC. First, the Court held there is no "pay first" rule requiring that a counterclaim plaintiff pay the tariffs before challenging their reasonableness. *Id.* at ——, 113 S.Ct. at 1219; *see also F.P. Corp. v. Sipco Corp.*, No. C91–4084, Order at 3 (N.D.Iowa Mar. 12, 1993). Second, the Court explained that the district court does not, strictly speaking, 'refer' a matter to the ICC, because there is no referral mechanism in the Interstate Commerce Act. Instead, the district court stays proceedings in order to give the party requesting review by the ICC a "reasonable opportunity within which to apply to the Commission for a ruling."

---

**3.** By way of background as well as to point the way to more reasons and policy behind staying cases, we note that five courts of appeals and one court in the District of Colorado interpreted *Maislin* to hold rate unreasonableness was a proper defense to an action for collection of undercharges, *see Milne Truck Lines*, 970 F.2d at 568–69; *Advance United Expressways v. Eastman Kodak*, 965 F.2d 1347, 1352 (5th Cir.1992); *Orr v. I.C.C.*, 912 F.2d 119, 122 (6th Cir.1990); *Delta Traffic Serv., Inc. v. Transtop, Inc.*, 902 F.2d 101, 106 (1st Cir.1990); *Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227, 1231 (7th Cir.1982); *Covey v. Conagra, Inc.*, 763 F.Supp. 479, 484 (D.Colo. 1991), and two courts of appeals allowed the

defense only where the carrier no longer had an adequate reparations remedy. *See Atlantis Express, Inc. v. Standard Transportation Services*, 955 F.2d 529, 536 (8th Cir.1992); *Duffy v. BMC Industries, Inc.*, 938 F.2d 353, 357 (2d Cir.1991). The ICC also ruled that rate unreasonableness was a defense in a filed rate action, particularly in light of the fact that many rate actions arise out of bankruptcy proceedings involving defunct carriers who are unable to honor reparations orders. *See* "Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement," 8 I.C.C.2d 61, 1991 WL 174898, at *14 (Aug. 15, 1991).

*Reiter*, —— U.S. at —— n. 3, 113 S.Ct. at 1220 n. 3 (internal citation omitted).

Even before *Reiter*, the weight of authority and the most persuasive reasoning was on the side of allowing rate unreasonableness as a defense in an action for collection of undercharges. We agree with the First and Ninth Circuits that referral of rate unreasonableness defenses to the ICC will not undermine the filed rate doctrine. *Milne*, 970 F.2d at 570; *Delta Traffic Serv.*, 902 F.2d at 105–06. Allowing shippers to stay district court proceedings protects them and the carriers and preserves the authority of the ICC to ensure uniform and reasonable rates. *Milne*, 970 F.2d at 570; Finally, in the event the carrier prevails before the ICC, prejudgment interest will be available. *See Milne*, 970 F.2d at 570; *Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.*, 931 F.2d 5, 7 (2d Cir.1991).

### B. Prima Facie Showing of Unreasonableness

■ Before the issue of rate unreasonableness can be referred to the ICC, the party challenging the rate must make a threshold showing that the rate at issue is unreasonable. *Milne*, 970 F.2d at 570; *Covey*, 763 F.Supp. at 482–83. Relevant factors in the determination include "relevant rate comparisons, a carrier's proffer of a particular rate, and whether the rate would have moved the traffic had it been asserted at the time the shipments took place." *Matter of Brown Transport Truckload, Inc.*, 144 B.R. 183, 187 (Bankr.N.D.Ga.1992). One common method of making a prima facie showing of unreasonableness is to provide affidavit testimony demonstrating a significant disparity between the rates sought to be charged by the carrier and the rates charged by competing carriers at the time in question. *See, e.g., Vining v. The Eureka Co.*, 1992 WL 370520, at *2 (N.D.Ill. Dec. 8, 1992) (holding eighty percent increase in demanded rates and showing that original rates were competitive with other carriers was prima facie unreasonable); *Matter of Brown*, 144 B.R. at

187 (noting defendant met burden of showing unreasonableness of rate sought by showing carrier's original rates were similar to those of competing carriers); *Bur–Cold Express, Inc. v. Parker Hannifin Corp.*, 808 F.Supp. 553, 558 (S.D.Tex.1992) (observing that documents referring to rates charged by other carriers supported defendant's position that filed tariff rate was in fact unreasonable); *Covey v. Conagra*, 788 F.Supp. 1160, 1164 (D.Colo.1992) (holding prima facie showing of unreasonableness made by presenting evidence that tariff rates in effect at time of shipments were well above rates paid to other carriers for same service).

■ Shepard's has provided evidence [4] and an affidavit by a Traffic Manager William T. Carter showing that Edson's corrected billings assess new charges far in excess of the original charges; whereas Shepard's originally paid Edson $39,416.86, Lewis now demands payment of an *additional* $80,498.07 [5]—an increase of over 200 percent. Shepard's has included freight bills from other carriers over the same route which appear to illustrate that the original rates charged by Edson were proper, and the current demands potentially unreasonable. Mr. Carter states Shepard's would not have used Edson—that is, Edson's rate would not have "moved the traffic"—had Edson originally charged the rates it now seeks. We conclude Shepard's has made out a prima facie case of unreasonableness. Accordingly, the issue of rate reasonableness in this case is referred to the ICC. Because the issue of the rate's reasonableness is "inextricably linked" to a prior determination of which tariff governs, *Eastman Kodak*, 965 F.2d at 1353, the question of which rate to apply is also referred to the ICC.

### III.

Accordingly, it is ordered that:

(1) Shepard's/McGraw–Hill's Motion for Stay and Reference to the Interstate Com-

---

4. We are obliged to point out that it is the parties, not the Court, whose job it is not only to marshal the relevant evidence but to explain to the Court its relevance. Shepard's has provided many exhibits without providing a detailed and nonconclusory explanation in its motion or its affidavit of their significance.

5. The complaint demands $82,593.50.

merce Commission, filed March 11, 1993, is GRANTED. This matter is hereby stayed to give Shepard's a reasonable opportunity within which to apply to the ICC for a ruling on the issue of the applicable rate and, if necessary, the reasonableness of the rate sought to be imposed by Lewis on Shepard's in this action.

(2) Defendant's Motion for Permission to File Reply to Plaintiff's Response to Motion for Stay and Reference to the Interstate Commerce Commission, filed April 5, 1993, is DEEMED MOOT.

(3) Pending further reports on the ICC's ruling, this case is ADMINISTRATIVELY CLOSED. The Court is to be advised of the status of this matter no later than August 2, 1993.