The BANKRUPTCY ESTATE OF B.J. McADAMS, INC., Plaintiff,

v.

SUGAR FOODS CORPORATION, Defendant.

92 Civ. 2769 (RLC).

United States District Court, S.D. New York.

July 11, 1994.

---

Piken & Piken, P.C. (Kenneth M. Piken, of counsel), Lake Success, NY, for plaintiff.

Auguello, Pezold & Hirschmann, P.C. (George Carl Pezold, of counsel), Huntington, NY, for defendant.

## *OPINION*

ROBERT L. CARTER, District Judge.

The bankruptcy trustee (the "Trustee") of the estate of B.J. McAdams, Inc. ("McAdams"), formerly a motor carrier, brought this action to collect undercharges for freight shipments delivered by McAdams on behalf of defendant, Sugar Foods Corporation ("Sugar Foods"). Sugar Foods filed a motion to dismiss for lack of subject matter jurisdiction, which the court denied on October 19, 1992. Following the completion of discovery, Sugar Foods filed this motion for summary judgment.

### I.

The undisputed facts are as follows. On May 3, 1988, Sugar Foods and McAdams entered into a written contract for the transportation of freight (the "Agreement"). McAdams was a motor carrier licensed by the Interstate Commerce Commission (the "ICC") to transport property both as a motor common carrier and a motor contract carrier.[1] From May 3, 1988 through October 12,

---

1. A motor common carrier is defined as "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C.A. § 10102(14) (1993). A motor contract carrier is defined, in relevant part, as "a person, other than a motor common carri-er, providing motor vehicle transportation of passengers for compensation under continuing agreements with a person or limited number of persons ..." 49 U.S.C.A. § 10102(15) (1993). More generally, the Supreme Court has written that a contract carrier "transports property under exclusive agreements with a shipper." *Mais-*

1989, McAdams moved 42 shipments on behalf of Sugar Foods in accordance with the Agreement, and Sugar Foods paid in full all freight charges as billed by McAdams.

On March 20, 1990, an involuntary petition for bankruptcy relief under Chapter 7 was filed against McAdams. The Trustee initiated the instant action on April 16, 1992, alleging that Sugar Foods owed the estate $6,771.78 as a result of freight undercharges.

Sugar Foods now moves for summary judgment, contending that it has paid all freight charges in full in accordance with the Agreement. Alternatively, Sugar Foods requests that the court stay this proceeding and refer to the ICC those issues within its primary jurisdiction. *See* 49 U.S.C.A. § 10701a (1993).

## II.

■ Defendant argues initially that the statute of limitations has expired as to all shipments delivered between May 3, 1988 and January 19, 1989.[2] It claims that because this action was not filed until April 16, 1992, all shipments delivered prior to April 16, 1989, are time-barred.

An action for the collection of freight undercharges on interstate shipments of goods is subject to a three-year statute of limitations, as measured from the date of delivery of the shipment. 49 U.S.C.A. § 11706(a) (1993). Section 108(a) of the Bankruptcy Act, however, gives a trustee an extension of time if the applicable statute of limitations has not run by the date of the filing of the bankruptcy petition—here, March 20, 1990.

*See* 11 U.S.C.A. § 108(a) (1993) ("§ 108(a)). In such cases, the time to file a cause of action is extended to the later of a) the end of the applicable statute of limitations period or b) two years from the order for relief. *Id.*

Because the bankruptcy petition was filed prior to the expiration of the statute of limitations, the Trustee is entitled to an extension, under § 108(a), until the later of April 16, 1992 (the date of the expiration of the statute of limitations) or two years from the filing of the order for relief. Although in cases of voluntary liquidation, the date of the filing of the bankruptcy petition and the order for relief are the same, *see* 11 U.S.C.A. § 301 (1993), where the liquidation is involuntary, the order for relief comes at some point after the petition's filing. *See* 11 U.S.C.A. § 303(h) (1993) (describing circumstances under which an order for relief should be entered in involuntary filing). Defendant has provided no evidence that an order for relief has been filed, and so the court cannot find that the Trustee's extension under § 108(a) has expired. Therefore, the Trustee's claims are not time-barred.

## III.

Still, the court need not reach the merits of this summary judgment motion if it grants Sugar Foods's request to refer to the ICC those matters within the Commission's "primary jurisdiction." Specifically, defendant has requested that the ICC determine 1) whether the "filed rate doctrine"[3] applies to the disputed shipments (i.e., whether the shipments at issue moved pursuant to Mc-

---

*lin Indus., U.S. v. Primary Steel, Inc.,* 497 U.S. 116, 133, 110 S.Ct. 2759, 2769, 111 L.Ed.2d 94 (1990); *see also Texas v. United States,* 730 F.2d 409, 417 (5th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985) (noting that common carriers "serve all comers at a general, publicly disclosed rate," whereas contract carriers "enter into private contracts authorized by the [Interstate Commerce] Act.")

**2.** The remaining shipments were delivered between May 19, 1989 and October 12, 1989.

**3.** A carrier must publish and file tariffs containing the rates for transportation service it may provide in interstate commerce. 49 U.S.C.A. § 10762 (1993). The filed rate doctrine provides that a carrier "may not charge or receive a different compensation for that transportation

... than the rate specified in the tariff...." 49 U.S.C.A. § 10761(a) (1993). Deviation from the filed rate is not permitted under any circumstances and deviation can result in the imposition of civil or criminal sanctions. *See* 49 U.S.C.A. §§ 11902–11904 (1993). Moreover, "ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed." *Maislin Indus.,* 497 U.S. at 127, 110 S.Ct. at 2766 (quoting *Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915)). Of significance to the instant case, however, is that the ICC has exempted contract carriers from the doctrine. *See id.* 497 U.S. at 133 n. 13, 110 S.Ct. at 2769–70 n. 13 (citation omitted).

Adams's "contract" or "common" carrier authority), and 2) if the doctrine does apply, whether McAdams's filed rates were unreasonable and therefore unenforceable, as being in violation of the Interstate Commerce Act ("ICA").

■ The doctrine of "primary jurisdiction" concerns the promotion of "proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R.R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The doctrine may apply "whenever enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body ..." *Id.* at 64, 77 S.Ct. at 165; *Atlantis Express, Inc. v. Standard Transp. Servs., Inc.,* 955 F.2d 529, 532 (8th Cir.1992). Issues should be referred to the ICC where they implicate complex matters requiring specialized knowledge which a court does not possess, and where referral would help maintain uniformity in decision making. *Atlantis Express,* 955 F.2d at 532–33. However, there is no fixed formula for applying the doctrine. *Crest Truck Lines, Inc. v. Cornucopia Natural Foods, Inc.,* 798 F.Supp. 90, 92 (D.R.I. 1992).

■ It is well-established that the ICC has primary jurisdiction to determine whether particular shipments were transported pursuant to contract or common carrier authority, and, in so doing, to decide whether the filed rate doctrine applies. *See Atlantis Express,* 955 F.2d at 533–34; *J.E.B. Enterprises—Petition for Declaratory Order—Certain Rates and Practices of Best Refrigerated Express, Inc.,* No. 40645, 1993 WL 217905, at *2, 1993 ICC LEXIS 128, at *7 (June 15, 1993). Here, if the disputed shipments were transported pursuant to McAdams's contract carrier authority, then the filed rate doctrine would not be applicable, and the rates previously charged by McAdams and paid by Sugar Foods would con-

trol. *See, e.g., Atlantis Express,* 955 F.2d at 533 , (citation omitted); *Brown Transp. Truckload, Inc. v. Beatrice/Hunt–Wesson, Inc.,* 142 B.R. 536, 539 (Bankr.N.D.Ga.1992); *J.E.B. Enterprises,* 1993 WL 217905, at *2, 1993 ICC LEXIS 128, at *6.

To determine under which authority McAdams moved Sugar Foods's carriage requires an interpretation of the provisions of the ICA, the regulations promulgated by the ICC, and case law. Referral here, therefore, would serve the purposes of the doctrine of primary jurisdiction by invoking the agency's expert and specialized knowledge in making this determination, and by promoting uniformity in the application of the statutory scheme.

■ Further, Sugar Foods requests that the issue of rate reasonableness be referred to the ICC as well. The ICA requires that a carrier's rates be "reasonable," 49 U.S.C.A. § 10701(a) (1993), and the Supreme Court has recognized that the filed rate is not enforceable if it is found to be unreasonable. *Maislin Indus.,* 497 U.S. at 128, 110 S.Ct. at 2766–67. The power to determine rate reasonableness rests within the primary jurisdiction of the ICC. *See id.; Great N. Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922); *Atlantis Express,* 955 F.2d at 537. Further, the Supreme Court's recent decision, in *Reiter v. Cooper,* confirmed that the court has the discretion to stay a carrier's undercharge claim pending referral to the ICC of a shipper's rate unreasonableness claim. —— U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993).[4]

In *Reiter,* the Court determined that, because it related to the same shipment as the carrier's claim, a rate unreasonableness claim was actually a counterclaim—not an affirmative defense as earlier courts had concluded—and so the undercharge and the rate unreasonableness claims could be brought in separate proceedings. —— U.S. at ——, 113 S.Ct. at 1217–19. As such, a lower court had

**4.** Prior to the *Reiter* decision, courts were split over whether an undercharge claim could be stayed. *Compare Delta Traffic Serv. v. Transtop, Inc.,* 902 F.2d 101, 104–06 (1st Cir.1990) (stay within discretion of court) *with In re Carolina*

*Motor Express, Inc.,* 949 F.2d 107, 110 (4th Cir. 1991) (stay contrary to ICA); *Lifschultz Fast Freight, Inc. v. Rainbow Shops, Inc.,* 784 F.Supp. 89, 91–93 (S.D.N.Y.1992) (Mukasey, J.) (same).

the option to hear the undercharge claim first, and then permit the defendant to pursue its reasonableness claim before the ICC, or, to stay the district court proceedings and refer the reasonableness claim to the ICC directly. *Id.* at ——, 113 S.Ct. at 1220–21. Moreover, the Court determined that a shipper was not required to pay the undercharge before litigating the rate reasonableness claim. *Id.* at ——, 113 S.Ct. at 1219–20.

Here, then, the best course would be to stay the proceeding before the court, and refer Sugar Foods's rate reasonableness claim to the Commission. *Accord F.P. Corp. v. Ken Way Transp., Inc.,* 821 F.Supp. 1032, 1038 (E.D.Pa.1993); *Lewis v. Shepard's/McGraw–Hill, Inc.,* 829 F.Supp. 348, 350–51 (D.Colo.1993); *de'Medici v. Flygt Corp.,* 157 Bankr. 397, 400–02 (Bankr.N.D.Ill. 1993). Referral would further notions of judicial economy, particularly given that the ICC decision may moot some or all of plaintiff's claims, and again enable the ICC to determine issues uniquely within its expertise. Therefore, the court will treat Sugar Food's affirmative defense of rate unreasonableness as a counterclaim, and refer the issue to the ICC for adjudication. *See Reiter,* —— U.S. at ——, 113 S.Ct. at 1217 (court may treat mistakenly designated affirmative defense as counterclaim); Rule 8(c), F.R.Civ.P. ("the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation").[5]

## CONCLUSION

The Trustee's undercharge claim will be stayed pending a determination by the ICC whether the filed rate doctrine applies and, if

---

so, whether McAdams's rates were unreasonable.

**IT IS SO ORDERED.**

---

5. Since the *Reiter* decision, there may no longer be a requirement that a party raising a rate reasonableness claim make a threshold showing of unreasonableness before the issue can be referred to the ICC. *See de'Medici,* 157 B.R. at 403. However, assuming *arguendo* that a threshold showing is required, the court finds that defendant has met its burden.

The ICC has stated that factors relevant to a rate reasonableness determination include whether the filed rate would have moved the traffic had it been assessed at the time the shipment took place, and how the carrier's rates compared with competitively set rates for the same traffic—especially those rates offered by healthy (non-bankrupt) carriers. *Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* 8 I.C.C.2d 61, 74–76 (1991); *see also Atlantis Express,* 955 F.2d at 537 (ICC's criteria for determining reasonableness as "highly probative" of what evidence supports referral). Here, according to the affidavit of Sugar Foods's expert, Michael Bange, McAdams's filed rates would not have moved Sugar Food's traffic, and the carrier's rates were not competitive with those offered by other carriers. (Bange Aff. at 11–12.)