In re **SACRED HEART HOSPITAL OF NORRISTOWN d/b/a Sacred Heart Hospital and Rehabilitation Center, Debtor.**

**SACRED HEART HOSPITAL OF NORRISTOWN, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF WELFARE, Defendant.**

**Bankruptcy No. 94–13275DAS.**
**Adv. No. 96–0744DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 7, 1996.

Order Supplementing Decision Aug. 15, 1996.

Matthew Strickler and Vincent J. Marriott, Philadelphia, PA, for Debtor.

John A. Kane, Thomas Blazusiak, Senior Assistant Counsel, Robert Slavkin, Assistant Counsel, Sallie A. Rodgers, Assistant Counsel, Leslie S. Oakes, Assistant Counsel, Commonwealth of Pennsylvania, Department of Public Welfare, Harrisburg, PA, for Defendant.

Neal D. Colton, Cozen & O'Connor, Philadelphia, for Creditors' Committee.

Robert Lapowsky, Wayne, PA, for AllMed Financial Corp.

John J. Koresko, V, Koresko & Noonan, Norristown, PA, for certain former employees of Debtor.

Claudia Z. Springer, Duane, Morris & Heckscher, Philadelphia, PA, for Municipal Bonds Investors Insurance Co.

J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Midlantic Bank.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

In response to the instant Complaint of SACRED HEART HOSPITAL OF NORRISTOWN d/b/a SACRED HEART HOSPITAL AND REHABILITATION CENTER ("the Debtor") seeking medical reimbursement from COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE ("DPW"), fashioned similar to the actions at issue in *In re St. Mary Hospital*, 125 B.R. 422 (Bankr.E.D.Pa.1991); and *In re St. Joseph's Hospital*, 103 B.R. 643 (Bankr.E.D.Pa.1989), DPW has filed multipronged Motions to Dismiss and a Motion for a More Definite Statement ("the Motions"), similar to those considered by us in *St. Mary*. The Motions to Dismiss raise, *inter alia*, the issues of primary jurisdiction, governmental immunity, and tardy submission of the claims. Following our decisions in *St. Mary, supra*, 125 B.R. at 425–27; and *St.*

*Joseph's, supra,* 103 B.R. at 649–53, despite the intervening presence of *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), in reference to the immunity issue, the Motions will be denied, particularly in light of the apparent willingness of the Debtor to limit the relief sought to a declaration that 11 U.S.C. § 108(a) renders its claims timely.

## B. FACTUAL AND PROCEDURAL HISTORY

The instant Chapter 11 case, filed on May 25, 1994, on behalf of a Debtor-hospital which had closed its doors a week before the filing, has spawned five opinions already reported in the Bankruptcy Reporter, all under the name of *In re Sacred Heart Hospital of Norristown,* and holding, respectively, as follows: 190 B.R. 38 (December 20, 1995) (Commonwealth Department of Labor and Industry ("L & I") held entitled to assert its $2,500,000 claim for unreimbursed unemployment compensation benefits as a priority claim under 11 U.S.C. § 507(a)(7)(E)) (referenced herein as *"Sacred Heart III"*); 186 B.R. 891 (September 28, 1995) (the Borough of Norristown was permitted to belatedly file a proof of claim); 182 B.R. 413 (May 17, 1995) (the Debtor's liquidating plan was confirmed); 181 B.R. 195 (April 19, 1995) (the Debtor's lawsuit seeking certain reimbursements from Blue Cross was referred, at least initially, to arbitration) (referenced herein as *"Sacred Heart I"*); 177 B.R. 16 (February 1, 1995) (a motion of certain former employees to file a class proof of claim and to extend the bar date as to them was denied); and 175 B.R. 543 (December 4, 1994) (a home health care service provider was not allowed to assert a trust against certain of the Debtor's accounts receivable). In addition, several decisions arising out of this case are published only on Westlaw, including a matter relevant to the instant controversy at 1995 WL 496005 (August 15, 1995) (holding that L & I's claim for unreimbursed workers' compensation benefits is properly classified as a general unsecured claim) (referenced herein as *"Sacred Heart II"*).

The foregoing decisions chronicle the facts of this case through the end of 1995. In the course of commencing about 150 post-confir-mation actions, mostly to recover preferences, the Debtor filed its complaint ("the Complaint") in the instant proceeding ("the Proceeding") on May 23, 1996. The Complaint asserts unsuccessful efforts by the Debtor to submit and re-submit Medicaid reimbursement claims to DPW between March 1995 and May 10, 1996. All of these claims were allegedly rejected solely on the basis of 55 PA. CODE § 1101.68(a)(1) ("the Code"), which states that

> [a] provider shall submit original or initial invoices to be received by the Department within a maximum of 180 days after the date the services were rendered or compensable items provided.

In the Complaint, the Debtor asserts that the claims must be deemed timely on account of 11 U.S.C. § 108(a), which provides as follows:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) two years after the order for relief.

In its prayer for relief, the Debtor "demands judgment against [DPW] in the amount to which it is entitled under the Medical Assistance Program."

DPW filed the Motions in response to the Complaint on July 1, 1996. Becoming aware of same only at the initial trial listing of the Proceeding on July 10, 1996 (in the midst of about 100 preference actions), we entered an Order of July 11, 1996, allowing the Debtor until July 26, 1996, to answer the Motions, and re-scheduling any necessary trial of the Proceeding on August 14, 1996.

## C. DISCUSSION

In its supporting legal Memorandum, the Debtor argues that it is merely asking this

court to decide the federal bankruptcy law issue of whether § 108(a) renders timely all of its 733 claims as to which the time period set forth in the Code had not expired as of the date of the filing of the Debtor's bankruptcy case. *See In re Fricker*, 192 B.R. 388, 394 (Bankr.E.D.Pa.1996) (§ 108 preserves only claims as to which limitations had not expired prior to the date of the filing of a bankruptcy petition). Viewing the Complaint in this light, we believe that the Debtor may be seeking only a declaratory determination that § 108(a) applies to extend the time for filing the claims until May 25, 1996. Although the Complaint's prayer for relief requests this court to actually resolve the underlying claims, the Debtor apparently recognizes that it is very likely that this court will follow the precedent in *St. Mary*, and defer to the DPW administrative process for at least a certain time on the basis of the doctrine of primary jurisdiction. 125 B.R. at 427–33. *Compare Sacred Heart I, supra*, 181 B.R. at 204 (the court recognizes that its lack of expertise in resolving medical insurance reimbursement claims justifies deferral to other decision-making bodies in such matters, there arbitration).

We are inclined to consider the Complaint as requesting merely this limited relief in deciding the Motions. In discussing the standards for deciding motions to dismiss in *In re Downingtown Industrial & Agricultural School*, 172 B.R. 813, 818 (Bankr.E.D.Pa. 1994), we stated that,

> [a]s we thusly noted in *In re Dinkins*, 79 B.R. 253, 257 (Bankr.E.D.Pa.1987), as well as in several other of our decisions, the burden placed upon the movant of a motion to dismiss is heavy:
>
> > "[i]t is black-letter law that a motion to dismiss 'is viewed with disfavor and is rarely granted' and that such relief is 'to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357, at 598, 604 (1969). Put otherwise, 'the court should deny a motion to dismiss for failure to state a claim

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' 2A J. MOORE, FEDERAL PRACTICE, § 12.07 [2.–5], at 12–65 (2d ed. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957))."

*See also, e.g., In re Nutri/System, Inc.*, 1994 WL 96963, slip op. at *2–*3 (Bankr. E.D.Pa. March 23, 1994); and *In re TM Carlton House Partners, Ltd.*, 110 B.R. 185, 187 (Bankr.E.D.Pa.1990). *Accord, Galgay v. Gangloff*, 677 F.Supp. 295, 297 (M.D.Pa.1987) ("The material allegations of the complaint should be regarded as admitted, and the complaint should not be dismissed unless it appears that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.").

Given the liberal standards relevant to which the Complaint must be read to overcome the Motions, we can easily dispose of many of the issues raised therein. The merits of any of the individual claims need not be addressed to resolve only the broad issue of the application of § 108(a). As in *St. Mary*, 125 B.R. at 426–27, the contention that the debtor has failed to state a claim and that a more definite statement of that claim is necessary are not well-taken, particularly in the context of the narrowness of the issue before us. We also note the impracticality of requiring the Debtor to recite the facts pertinent to 773 separate claims. The request for dismissal or at least a stay pending the Debtor's initial resort to the DPW administrative process will certainly be strongly considered if the Debtor argues that this court should decide the entire battery of 733 claims. *See id.* at 427–33. The only issues of substance which we perceive are before us for a present decision are (1) whether § 108(a) in fact does preserve claims regarding which the 180–day period set forth in the Code had not run at the time of the Debtor's bankruptcy filing; and (2) whether the *Seminole* decision, restoring governmental immunity against a state agency such as DPW, precludes any relief, even the limited declaratory relief which is all that this court is likely to grant to the Debtor.

DPW's argument relating to § 108(a) is brief enough to quote in full as follows:

> In its Complaint, [the Debtor] fails to allege any actions by [DPW] which would give rise to some cause of action from which a statute of limitations would begin to run. [The Debtor] merely alleged that it rendered some unspecified services and that at some later dates, it submitted invoices for the payment of these services. The time limitations at 55 Pa.Code § 1101.68 are time limits for invoicing of services by providers and simply are not akin to a statute of limitation.

Defendant's Memorandum of Law, at 15.

▇▇▇ The Debtor's citation to *Commonwealth Dep't of Public Welfare v. Soffer*, 118 Pa.Cmwlth. 180, 182, 544 A.2d 1109, 1110 (1988), in which the Code section in issue is specifically referenced as a "statute of limitations," answers DPW's apparent contention that it is not. We follow the court in *Coliseum Cartage Co. v. Rubbermaid Statesville, Inc.*, 975 F.2d 1022, 1025 (4th Cir.1992), in reading § 108(a) broadly, as applying to any post-petition claims, as well as to pre-petition claims regarding which the limitations period had not expired as of the petition filing date. *See also Bankruptcy Estate of B.J. McAdams, Inc. v. Sugar Foods Corp.*, 171 B.R. 12, 14 (S.D.N.Y.1994); *Bankruptcy Estate of B.J. McAdams, Inc. v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D.Ga.1993); and 2 COLLIER ON BANKRUPTCY, ¶ 108.02, at 108-3 to 108-8 (15th ed. 1995). Since all that the Debtor appears to be seeking is a declaration that § 108(a) supports a determination that the claims are timely, references to specific claims and the dates of services relevant to those claims are unnecessary. We therefore will not dismiss the Complaint on the basis of DPW's allegations pertinent thereto quoted at pages 132–33 *supra*.

That leaves only the issue of DPW's potential governmental immunity for us to address. DPW acknowledges that the claims of L & I referenced in *Sacred Heart II* and *Sacred Heart III*, which total in excess of $2.5 million, would effect a waiver of any governmental immunity rights of any state agency, including DPW, irrespective of the presence of the eleventh amendment, under the reasoning employed in *St. Mary, supra*, 125 B.R. at 425–26. DPW, though relying on cases decided prior to October 22, 1994, apparently contends that developments since that date require us to revise our holdings in that case. *See also Downingtown, supra*, 172 B.R. at 820–23 (this court follows *St. Mary* and *St. Joseph's* in an opinion filed on October 10, 1994).

On October 22, 1994, effective immediately, Congress amended § 106 to abrogate all governmental immunity, including that of state governmental entities, overruling the decision in *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), with which we wrestled in *St. Mary, St. Joseph's*, and *Downingtown*. That Bankruptcy Code section now provides, in pertinent part, as follows,

**§ 106. Waiver of sovereign immunity**

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections ..., 106, ..., 547, ..., 549, ... of this title.

(2) The court may hear and determine any issues arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is

**134**

a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

Thus, amended § 106 clearly abrogated governmental immunity of all bodies, including those of states. However, on March 27, 1996, the Supreme Court decided the *Seminole* case, in the course of which it held as follows, —— U.S. at ——–——, 116 S.Ct. at 1131–32:

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states.[16] The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction ...

That conclusion is exaggerated both in its substance and in its significance. First, Justice STEVENS' statement is misleadingly overbroad. We have already seen that several avenues remain open for ensuring state compliance with federal law. *See supra*, at n. 13. Most notably, an individual may obtain injunctive relief under *Ex parte Young* [, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908),] in order to remedy a state officer's ongoing violation of federal law. *See supra*, at n. 14. Second, contrary to the implication of Justice STEVENS' conclusion, it has not been

widely thought that the federal ... bankruptcy, ... statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under [this] statutory schemes ...; ... Although the ... bankruptcy laws have existed practically since our nation's inception, ... there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States....

---

16. Justice STEVENS understands our opinion to prohibit federal jurisdiction over suits to enforce the bankruptcy, ... laws against the States. He notes that federal jurisdiction over [this] statutory scheme ... is exclusive, and therefore concludes that there is "no remedy" for state violations of th[is] federal statute.... *Post,* at 1145 n. 1.

As the preceding excerpts from footnote 16 make clear, the *Seminole* decision is meant to have pertinence to the Bankruptcy Code and therefore to § 106. *See also Ohio Agricultural Commodity Depositors Fund v. Mahern,* —— U.S. ——, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (bankruptcy law decision raising immunity issue remanded in light of *Seminole* ). However, since the Bankruptcy Code and § 106 were not in issue in *Seminole,* the Court did not discuss in any further detail the impact of its decision upon that Code section. Notably, it did not and could not address the effect of *Seminole* upon § 106(a). Presumably, certain provisions of § 106(a), *e.g.,* §§ 106(a)(2), (a)(4), (a)(5), remain unscathed by *Seminole,* and we are prohibited only from enforcing §§ 106(a)(1), (a)(3) broadly against a state agency such as DPW in light of *Seminole.*

■ We continue to believe that the concept that a bankruptcy claimant waives constitutional rights when asserting a claim in the bankruptcy court, as articulated in *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990); and *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58–59, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989) (seventh amendment right to a jury trial waived by the filing of a proof of claim), survives *Seminole.* As we noted in *Downingtown,* 172 B.R. at 823, prior to October 22, 1994,

> many courts ... held that an assertion of a right against a debtor by the IRS may in

itself constitute an "informal proof of claim" sufficient to waive sovereign immunity, ..., *e.g., In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146, 1149–54 (9th Cir.1992); *In re Gribben,* 158 B.R. 920, 922–24 (S.D.N.Y.1993); *In re Hudson,* 168 B.R. 449, 451 (Bankr. S.D.Ga.1994); *In re Boldman,* 148 B.R. 874 (Bankr.C.D.Ill.), *aff'd,* 157 B.R. 412 (C.D.Ill.1993); and *In re Tyson,* 145 B.R. 91, 94 (Bankr.M.D.Fla.1992). *See also In re Craftsmen, Inc.,* 163 B.R. 88, 91–93 (Bankr.N.D.Tex.1993) (trustee's filing of a claim *for* a United States agency waives immunity). *Cf. In re Operation Open City, Inc.,* 170 B.R. 818, 822–24 (S.D.N.Y. 1994) (a state need not file a formal proof of claim to waive its Eleventh Amendment sovereign immunity).

■ We acknowledge that §§ 106(b) and (c) limit setoff by debtors against governmental units to claims against the particular governmental unit making the claim. However, we observe that Congress' preservation of §§ 106(b), (c), even after its enactment of § 106(a), effectively rebuts the argument that our holdings in *St. Mary* and *St. Joseph's* would emasculate former 11 U.S.C. §§ 106(a) and (b). Sections (b) and (c) were apparently preserved, even after enactment of amended § 106(a), to emphasize the applicability of certain waivers and setoff, respectively, the latter of which can be accomplished without resort to an action within the scope of § 106(a). Sections (b) and (c) therefore appear to have been enacted (amended) to preserve certain specific rights, not *limit* the effect of a state's submission to bankruptcy court jurisdiction by the filing of a proof of claim in the debtor's bankruptcy case.

■ We also observe that the holdings in *St. Mary* and *St. Joseph's* that a claim filing by one state agency should constitute a waiver of eleventh amendment immunity rights for all state agencies is strengthened by the development of the principle that a governmental entity is generally considered as a unitary creditor for purposes of setoff rights. *See, e.g., In re Turner,* 84 F.3d 1294, 1296–99 (10th Cir.1996) (en banc), citing *Cherry Cot-*

*ton Mills v. United States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946). *Accord, In re Doe,* 58 F.3d 494, 497–98 (9th Cir.1995); *Luther v. United States,* 225 F.2d 495, 498 (10th Cir.1954); and *In re HAL, Inc.,* 196 B.R. 159, 165 (Bankr. 9th Cir.1996). We note that, in one of the few reported post-*Seminole* bankruptcy decisions, *In re Martinez,* 196 B.R. 225, 229–30 (D.P.R.1996), the court is careful to note that *Seminole* applied because the state agency in issue did not file a proof of claim ("The Supreme Court has stated in obiter dicta that the filing of a claim will waive sovereign immunity under § 106(a) and suggests that the filing of a claim is necessary for finding a strict waiver."). *Id.* At 229.

■ Finally, we have considerable doubt that an immunity claim could be asserted as a defense to an action merely seeking a declaration that § 108(a) applies here so as to require DPW to accept the Debtor's claims, as may be all that is in issue here. There is no question that DPW has acknowledged its duty to reimburse Medicaid providers for services properly billed and timely claimed. It apparently would have reimbursed the Debtor for at least some of its claims without questioning its apparent liability had the issues of limitations and the applicability of § 108(a) not arisen. Since it appears that the only order which this court would ultimately enter in this case is one declaring that § 108(a) is available to extend the limitations set forth in the Code as to the applicable state administrative proceedings, which the agency in issue was prepared to accept but for its erroneous interpretation of federal law regarding the stay of limitations of such claims, it is difficult to see how immunity could logically be implicated.

## D. CONCLUSION

For all of the reasons set forth herein, the various Motions of DPW will be denied. DPW will be required to answer the Complaint on or before August 12, 1996, to allow us to preserve the trial date of August 14, 1996. We urge the parties to attempt to amicably resolve this dispute in light of this disposition.

**136**

SUPPLEMENTAL ORDER

Aug. 15, 1996

DAVID A. SCHOLL, Chief Judge.

AND NOW, this 15th day of August, 1996, in light of a colloquy with interested counsel at the trial of this proceeding on August 14, 1996, and in view of and consistent with this court's Opinion and Order of August 7, 1996, in reference to the Defendant's Motion to Dismiss or obtain other relief in its favor in the proceeding, it is hereby ORDERED AND DECREED as follows:

1. Upon advice of the Debtor's counsel that the Debtor would presently be satisfied with an Order declaring that 11 U.S.C. § 108(a) applies here so as to require the Defendant to accept all of the Debtor's claims as to which the applicable 180–day limitation period set forth in 55 PA.CODE § 1101.68 ("the Code") had not expired as of May 25, 1994, and to remand any hearings on the Debtor's Medicaid claim to the Defendant's Bureau of Hearings and Appeals ("the Bureau"), consistent with our Order accompanying the Opinion reported as *In re St. Mary Hospital,* 125 B.R. 422 (Bankr.E.D.Pa. 1991), judgment is entered in part in favor of SACRED HEART HOSPITAL OF NORRISTOWN ("the Debtor") and against the COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE ("DPW").

2. It is DECLARED that all of the Debtor's claims against DPW which had not expired, pursuant to the Code, as of May 25, 1994, are timely filed, by effect of 11 U.S.C. § 108(a), and shall be accepted by DPW as timely filed.

3. Any further actions in this proceeding are stayed pending disposition of the administrative process before the Bureau in reference to the Debtor's claims.

4. On or before December 31, 1996, counsel for both parties shall file and serve upon opposing counsel and the court in chambers a report on the progress of the claims process before the Bureau, and their respective recommendations as to whether this court should proceed to hear the individual claims in issue at that time or at any future time.

5. A conference will be conducted at the following date, time, and place, at which the court will further consider and hopefully decide whether it will continue the stay of this proceeding or what other disposition may be appropriate:

WEDNESDAY, JANUARY 8, 1997, at 9:30 A.M.

And shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.