**BANKRUPTCY ESTATE OF B.J. McADAMS, INC., Plaintiff,**

v.

**RALSTON PURINA COMPANY, Defendant.**

Civ. A. No. 1:92–CV–0667–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 24, 1993.

810

Arthur B. Seymour, Atlanta, GA, Alan D. Harris, Harris & Taylor, Minneapolis, MN, for plaintiff.

Bruce Elder Mitchell, Mitchell & Hersh, Atlanta, GA, George Carl Pezold, Augello, Pezold & Hirschmann, Huntington, NY, for defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendant Ralston Purina Company's motion to dismiss. Plaintiff-debtor B.J. McAdams, Inc., a motor carrier, brought this action to collect alleged freight "undercharges." Plaintiff-debtor is currently in Chapter 7 bankruptcy liquidation in the United States Bankruptcy Court for the Eastern District of Arkansas. An interim trustee for Plaintiff-debtor was appointed on April 13, 1990. On April 20, 1990, the bankruptcy court entered an order lifting and modifying the automatic stay to allow the largest secured creditor, MNC Commercial Corporation, to collect freight charges owed to the debtor and apply recovered monies to the debt owed by the debtor to MNC.

Thereafter, MNC and the interim trustee entered into an agreement with Professional Truck Auditing, Inc. (PTA), a collector of unpaid or underpaid receivables for motor carriers, to collect freight "undercharges" owed to the debtor. MNC, PTA and the interim trustee agreed that collected charges would be split forty-five percent for PTA and fifty-five percent for MNC. The bankruptcy court approved the agreement.

On September 30, 1991, a successor trustee was appointed. On January 16, 1992, the bankruptcy court approved a modification of the MNC/PTA/trustee collection agreement. Under the new terms MNC would receive fifty-four percent, PTA would receive forty-four percent, and the trustee, on behalf of the unsecured creditors, would receive two percent of collected charges.

■■■ Defendant challenges the plaintiff's authority to bring this action. The Bankruptcy Code defines the property of the debtor's estate to include "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed. *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir.1988); *Miller v. Shallowford Community Hospital, Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985). An account receivable of the debtor is property of the estate. *Georgia Pacific Corp. v. Sigma Service Co.*, 712 F.2d 962, 967–68 (5th Cir. 1983); *In re Aaronics Equipment Rentals & Sales, Inc.*, 56 B.R. 297, 298 (Bankr. M.D.La.1985).

When the interim trustee was appointed on April 13, 1990, the trustee succeeded to all claims of the debtor for due and owing freight charges. The trustee became the sole representative of the estate. 11 U.S.C. § 323(a); *Vreugdenhill v. Hoekstra*, 773 F.2d 213, 215 (8th Cir.1985). The debtor thereafter lacked standing to pursue such claims. *Jones*, 858 F.2d at 669; *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987) (standing doctrine applicable in bankruptcy cases).

■■■ The parties, however, have raised several novel theories which potentially would depart from this reasoning. It is argued that the court's lifting of the automatic stay ended the trustee's control of this property of the estate and that, therefore, the debtor may bring this action.[1]

■■■ Bankruptcy Code § 362(d) allows a court to grant relief from the automatic stay. Such relief may be granted if "with respect to stay of an act against property" of the estate, the "debtor does not have equity in such property," and "such property is not necessary to an effective reorgani-

---

1. Presumably, one might also argue that the lifting of the stay to allow the pursuit of claims amounts to an abandonment of the property by the trustee pursuant to 11 U.S.C. § 554(a). Abandonment, however, is the exception rather than the rule and is to be utilized only where the abandonment will prevent more losses to the estate than the administration of the asset would. Furthermore, such abandonment must be clear and unequivocal by the trustee. *See,* *e.g., Vreugdenhill v. Navistar International Transportation Corp.*, 950 F.2d 524, 525–26 (8th Cir.1991) (Chapter 7 debtor could not bring claim for damages for supplier's failure to accept returned parts because claim had not been abandoned formally or by operation of law by trustee); *Harris v. St. Louis University*, 114 B.R. 647, 649 (Bankr.E.D.Mo.1990) (trustee never abandoned cause of action, so debtor never regained standing).

zation." Since the debtor is in Chapter 7 liquidation, the lack of equity and the lack of need for reorganization can be assumed.

■ A total lifting of the automatic stay would return the parties to the legal relationship which existed prior to its imposition. *Matter of Winslow*, 39 B.R. 869, 871 (Bankr.N.D.Ga.1984). Once the stay was totally lifted, the debtor could clearly pursue freight "undercharges."

■ Section 362(d), however, is flexible. It does not merely address the lifting or imposition of the stay. Section 362(d) allows the court the options of "terminating, annulling, modifying, or conditioning" the stay. The effect is to permit the court to fashion the relief to the particular circumstances of the case. *Brown v. Navarro*, 743 F.2d 1069, 1074 (5th Cir.1984). This modification or conditioning of the stay often can protect the non-debtor party sufficiently by permitting the exercise of certain but not all rights. *Id.*

The bankruptcy judge in Plaintiff-debtor's Chapter 7 proceeding did not simply lift the stay. Rather, the judge granted relief by modifying the stay to allow MNC to pursue and collect accounts receivable and apply recovered monies to the debts owed by the debtor to MNC. This modification was clearly within the bankruptcy court's authority. *Id.* at 871. The agreement between MNC, PTA and the interim trustee, which was approved by the bankruptcy court, allowed for continued oversight by both the trustee and the court. This court cannot, therefore, find that the stay was lifted, returning the parties to the legal status quo outside of bankruptcy. The trustee retained his authority as the sole representative of the estate. 11 U.S.C. § 323(a). Furthermore, nowhere in the agreement did the trustee give up the right to pursue legal claims for these freight charges. The agreement envisioned PTA's administrative collection efforts rather than usurped the trustee's right to pursue legal efforts.

■ Also novel is Defendant Ralston Purina's attempt to characterize the first agreement and modification of the stay as a sale of assets. A sale of accounts receivable would divest both the trustee and the debtor of the right to control their collection. This argument is misplaced. The debtor's estate receives no proceeds in the agreement which allows MNC and PTA to collect freight "undercharges." Nor does MNC and PTA take free and clear title to these "accounts." Rather, the trustee maintains supervision but allows MNC, the largest secured creditor, to pursue collections. MNC clearly desired to pursue such claims since it likely thought it could collect more of its 100 cents on the dollar by these efforts than could the trustee. The trustee likely favored the agreement because it allowed the trustee to forego administrative costs related to the collection of freight charges and reduce the largest secured claim against the estate.

■ Likewise, the later modification of the agreement to grant the trustee two percent of the collected charges alone cannot be considered an effort to "bootstrap" MNC within the trustee's two-year extension from the date of bankruptcy relief pursuant to 11 U.S.C. § 108(a).[2] The modification of the agreement was based on an objection filed by an unsecured creditor of which the trustee is also a representative. The authority provided by the defendant to further its "bootstrapping" argument is inapposite because no sale of the asset occurred from which the creditor had to be bootstrapped. Regardless, whether the statute of limitations has run in this matter is not necessary to deciding the question of the debtor's standing to bring this action.

Plaintiff-debtor's claims against Ralston Purina became part of the estate when the involuntary petition for bankruptcy was

---

**2.** Section 108(a) reads as follows:

If applicable non-bankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
(1) The end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) Two years after the order for relief.

filed and the interim trustee was appointed. Since the complaint before the court shows that it was not brought by the trustee, the claim remains part of the debtor's estate. The trustee, not Plaintiff-debtor, B.J. McAdams, Inc., has standing to sue.

Defendant's motion to dismiss for lack of standing must, therefore, be GRANTED [10–1]. The Clerk of Court is ORDERED to DISMISS this action. The trustee may, however, within ten (10) days of the entry of this order, move this court to substitute himself as party plaintiff. Such a motion will be treated as a motion for reconsideration. Upon the filing of such a motion by the trustee, the Clerk of Court is ORDERED to REOPEN this case.

SO ORDERED.