In re Juanita PRICE, Debtor.

Juanita PRICE, Plaintiff,

v.

Adam GASLOWITZ, Defendant.

Bankruptcy No. A92–79420.
Adv. No. 93–6187.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 29, 1994.

Richard K. Valldejuli, Jr., Atlanta, GA, for plaintiff/debtor.

Mark A. Kelley, Kitchens Kelley Gaynes, P.C., Atlanta, GA, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES E. MASSEY, Bankruptcy Judge.

Juanita Price (the "Debtor" or "Plaintiff") seeks to recover from Adam Gaslowitz (the "Defendant") funds paid to him as her attorney in partial settlement of an interpleader action initiated by Metropolitan Life Insurance Company ("Metropolitan") in the United States District Court for the Northern District of Georgia. The Defendant does not deny that when he received the funds, they did not belong to him. Shortly thereafter, while unaware of the Debtor's bankruptcy case, he applied the funds to his pre-petition claim for legal fees. The Plaintiff asserts that the funds constitute property of the estate and that the Defendant violated the automatic stay by using the funds to pay his claim. She seeks a judgment directing the Defendant to turn over the funds to the Chapter 7 trustee pursuant to 11 U.S.C. § 542.

The Defendant contends that he did not violate the automatic stay because he properly exercised a right of recoupment. He further contends that the doctrine of collateral estoppel bars the Plaintiff's claim, the parties having litigated the extent of the Defendant's interest in the insurance proceeds in connection with the interpleader action.

Both parties have moved for summary judgment. Because the Plaintiff lacks standing to bring this action, this case must be dismissed.

### STATEMENT OF FACTS

The material facts are not disputed. The Debtor sued her former husband for a divorce in the Superior Court of DeKalb County, Georgia (the "Superior Court"). The Superior Court granted a judgment of divorce in 1987 in connection with a motion by Mr. Price to enforce a settlement agreement between the parties. The Plaintiff challenged that divorce decree at various times on grounds of lack of notice and her lack of competency to enter into the settlement agreement. In 1990, Mr. Price died. At the time of his death, he had been living with another woman, Wanda Cloud, who claimed to be his common law wife. The Plaintiff's efforts to have the divorce decree vacated intensified when Ms. Cloud claimed to be the beneficiary under a will of Mr. Price and under an insurance policy issued by Metropolitan.

On January 10, 1991, the Debtor and her children (collectively the "Price Family") retained the Defendant, Adam Gaslowitz, to represent them (1) to contest a will naming Wanda Cloud as a beneficiary, (2) to contest the beneficiary designation forms submitted to Metropolitan with respect to a life insurance policy on Mr. Price's life, (3) to recover Mr. Price's military and civil service pension for the Plaintiff, and (4) to continue efforts to have the 1987 divorce decree set aside. The Defendant and the Price Family executed a fee agreement on that date.

During 1991, the Defendant successfully negotiated an agreement pursuant to which Mr. Price's pension would be paid to the Plaintiff. The Defendant also negotiated an agreement with Metropolitan and Ms. Cloud regarding the Plaintiff's claim to the life insurance proceeds. He appeared on behalf of the Plaintiff in the Superior Court and moved for reconsideration of the divorce decree. On September 3, 1991, the Superior Court set aside the divorce decree. Ms. Cloud appealed, and the Georgia Supreme Court affirmed the trial court's order.

Despite the ruling of the Georgia Supreme Court, Metropolitan would not distribute the proceeds of the life insurance policy because of the continuing feud between the Plaintiff and Ms. Cloud. On April 22, 1992, it initiated an interpleader action in the United States District Court against Ms. Cloud and the Plaintiff.

After Mr. Price died, the Plaintiff stopped making payments on a loan secured by her residence. On three separate occasions, the lender advertised to conduct a foreclosure sale, and on each occasion, the Debtor filed a bankruptcy petition. The first two cases were dismissed prior to August 1992.

In August 1992, the Defendant filed a notice of attorney's lien in both the Superior Court and the United States District Court.

In the summer of 1992, the Defendant represented the Plaintiff in negotiating a settlement with Ms. Cloud pursuant to which Ms. Cloud agreed that Metropolitan could make a partial distribution of $52,000 from the life insurance proceeds to the Plaintiff to enable her to pay off the mortgage debt on her residence. The Superior Court entered a consent order providing for the partial distribution. Metropolitan refused to act on it, however, and insisted that the right to the insurance proceeds be resolved in the interpleader action.

In September 1992, the Defendant prepared a proposed consent order in the federal interpleader action reiterating the agreement reached in the Superior Court. This time, however, Ms. Cloud conditioned her consent to the proposed order on the Plaintiff's agreement to the release of additional insurance proceeds to pay the expenses of Mr. Price's funeral. The Plaintiff refused Ms. Cloud's demand.

On October 26, 1992, the Defendant filed a motion in the interpleader action on behalf of the Price Family to enforce the settlement with Ms. Cloud. Ms. Cloud did not oppose the motion and, on November 24, 1992, the District Court entered an order granting the motion.

On November 30, 1992, the Debtor filed her third and present bankruptcy case. The Defendant contends that he did not receive notice of the bankruptcy case until January 25, 1993.

On December 17, 1992, the District Court directed Metropolitan to issue its check to "Adam Gaslowitz as attorney for Juanita M. Price." The Defendant received a check for $52,000 from Metropolitan on December 29, 1992. In early 1993, he sent the Debtor a bill in the amount of $61,994 and then applied the payment from Metropolitan to the bill.

On December 31, 1992, the Debtor, through her bankruptcy attorney, filed a motion for relief from stay to permit litigation concerning the insurance policy to proceed in the Superior Court [1] and in the U.S. District Court. She did not serve the Defendant with a copy of the motion, in spite of the fact that he was her attorney of record in both the state and federal actions. Although she was aware that the Defendant had effected a setoff of the settlement proceeds, the Plaintiff did not ask this court to enforce the stay. On February 28, 1993, this court entered an order granting the Debtor's motion to modify the stay.

On May 26, 1993, the Debtor, proceeding *pro se*, filed an amended motion in the federal interpleader action to vacate the order enforcing the insurance settlement with Ms. Cloud. In that motion she contended that she had never retained the Defendant to represent her in that action. On May 29, 1993, the District Court entered an order directing the Defendant to pay the $52,000 into the court's registry until the ownership of the funds could be determined.

On June 10, 1993, the Defendant filed a motion for reconsideration in the District Court. Dennis M. Hall, as the Chapter 7 trustee (the "Trustee") for the Debtor's estate, filed a notice of appearance in the federal interpleader action on June 30, 1993. On October 12, 1993, the District Court granted the Defendant's motion for reconsideration and ruled that "Mr. Gaslowitz had a valid, perfected lien on the money paid to him for

---

1. Ms. Cloud filed a second action in the Superior Court in early 1992, and in October, 1992, that court vacated the 1991 order setting aside the 1987 divorce decree.

his client." The order permitted the Defendant to retain the $52,000.

The District Court declined to make a finding that the Defendant's claim for fees was unliquidated and without merit. It held that the Defendant had a valid, liquidated claim for attorney's fees that "cannot be rendered unliquidated by challenging the amount billed after the attorney has enforced his lien by disbursing sums from the trust account to his general operating account." *Metropolitan Life Insurance Co. v. Juanita R. Price, et al.,* Case No. 1:92–cv–948–RLV (N.D.Ga. October 12, 1993). The District Court directed the parties to refer any dispute concerning fees to the Fee Arbitration Board of the State Bar of Georgia.

Neither the Trustee nor the Plaintiff has objected to the claim of the Defendant in the bankruptcy case or challenged the reasonableness or amount of the fees in this adversary proceeding. In fact, in her Brief in Support of Plaintiff's Motion for Summary Judgment, the Plaintiff specifically stated, "The issue as (to) whether or not the Plaintiff owes the Defendant legal fees is not the issue before this Court with respect to this Motion for Summary Judgment. What is at issue is whether the Defendant's actions to setoff the $52,000.00, postpetition, against his prepetition debt was legal and allowable under bankruptcy law."

The Trustee filed an amended status report in the Plaintiff's Chapter 7 case on December 2, 1993, in which he reported that he had reviewed the October 12, 1993, order of the District Court and the facts of the case and that he did not believe there was "sufficient benefit for the estate to justify continued litigation against Adam Gaslowitz." He filed a report of no distribution to creditors on December 7, 1993.

### DISCUSSION AND CONCLUSIONS OF LAW

■ In her complaint initiating this adversary proceeding, the Plaintiff seeks a judgment pursuant to 11 U.S.C. § 542 directing the Defendant to turn over to the trustee property of the estate. This court has threshold jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2)(E). Section 542 re-

quires one in possession, custody or control of the estate's property to deliver that property to the trustee. In a Chapter 7 case, the trustee has, in addition to other duties, the responsibility to collect and to liquidate the property of the estate. 11 U.S.C. § 704(1). When an entity other than the trustee unilaterally undertakes to sue on a cause of action belonging to the estate, the first inquiry, which the parties did not address but which the court raises, is whether that entity has standing to do so.

■ The requirement that a plaintiff have standing to bring an action is grounded in the United States Constitution. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies." ... "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Vander Jagt v. O'Neill,* 226 U.S.App.D.C. 14, 26–27, 699 F.2d 1166, 1178–1179 (1983) (Bork, J., concurring). The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government.

The Art. III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these doctrines. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin, supra,* 422 U.S. [490], at 498, 95 S.Ct. [2197], at 2205 [45 L.Ed.2d 343 (1975) ]. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of

generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *See Valley Forge, supra,* 454 U.S. [464], at 474–475, 102 S.Ct. [752], at 759–760 [70 L.Ed.2d 700 (1982) ].

468 U.S. at 750–751, 104 S.Ct. at 3324.

■ The Plaintiff in this case fails to meet the test requiring vindication of her own legal rights, rather than those of another. A turnover action under section 542 is one facet of a trustee's general duty under section 704(1) to "collect and reduce to money the property of the estate." A Chapter 7 trustee is the estate's sole representative. *Miller v. Shallowford Community Hosp., Inc.,* 767 F.2d 1556, 1559 (11th Cir.1985) ("the trustee in bankruptcy succeeds to all causes of action held by the debtor at the time that a bankruptcy petition is filed"). Therefore, a debtor may not unilaterally prosecute a claim that belongs to the estate.[2] *Cf., Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988) (debtor's postpetition release of a prepetition claim not binding on the trustee); *Bauer v. Commerce Union Bank, Clarksville, Tennessee,* 859 F.2d 438 (6th Cir.1988), *cert. denied Bauer v. Waldschmidt,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989) (substitution of Chapter 7 trustee as plaintiff in action brought by the debtor on a prepetition claim not an abuse of discretion). Fed.R.Bankr.P. 6009 supports this interpretation; it authorizes the trustee and debtor in possession to commence and prosecute an action in behalf of the estate but does not mention a Chapter 7 debtor.

Common sense supplies the rationale underlying the Code's policy that other parties in interest have no unilateral authority to perform the duties of a trustee. Multiple prosecutions of the same claims would lead to duplication of effort, confusion, waste and delay. Unilateral intervention by a party in interest, however laudable that party's motivation, may conflict with a trustee's strategy and result in a smaller, rather than a larger,

recovery. An unauthorized plaintiff may disclaim any duty to protect the interests of the estate. The court and the trustee would lack the degree of control over a volunteer plaintiff necessary to insure that the duty being assumed is faithfully and competently performed. In short, a bankruptcy estate, like a ship, can have but one captain.

■ Although the Bankruptcy Code does not empower a party in interest unilaterally to undertake a trustee's duties, it does not prohibit the court from authorizing a party in interest to perform a duty in the trustee's name. In *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 247 (5th Cir.1988), the Court of Appeals discussed factors relevant to the issue of whether a party in interest other than the trustee has standing to prosecute a claim belonging to the estate. There, a bankruptcy court had authorized a creditor's committee in a Chapter 11 case to bring an action for breach of fiduciary duty in the name of the corporate debtor in possession against officers and directors of the debtor. The district court dismissed the case for failure to state a claim. On appeal, the defendants challenged the standing of the plaintiff. The Fifth Circuit reversed, holding that the committee had standing to bring the claim in the name of the corporation.

> While the circumstances under which a creditors' committee may sue are not spelled out in the Code, the bankruptcy courts have generally required that the claim be colorable, that the debtor-in-possession have refused unjustifiably to pursue the claim, and the committee first receive leave to sue from the bankruptcy court. *Louisiana World Exposition Inc. v. Federal Ins. Co. (In re Louisiana World Exposition Inc.),* 832 F.2d 1391, 1397 (5th Cir.1987) (citing cases). "We agree that these are relevant considerations, though not necessarily a formalistic checklist." *Id.*

858 F.2d at 247 (footnote omitted).

■ The components of standing that permit a creditors' committee to perform a

---

**2.** A Chapter 13 debtor has standing to recover property of the estate and need not obtain court authorization because a Chapter 13 debtor re-

mains in possession of property of the estate and has the rights and powers of the trustee to use that property. 11 U.S.C. §§ 1303; 363(b).

Chapter 11 trustee's duty are relevant to a debtor's standing to perform a Chapter 7 trustee's duty. All of those components are missing in this case.

First, there is nothing in the record to indicate that the Trustee unjustifiably refused to bring the action against the Defendant. The record shows only that he did not object to her doing so.

■ Second, the Plaintiff did not obtain leave of court to bring the suit. The lack of court authorization is fatal to a claim of standing to act on behalf of a trustee. It is no rejoinder that a trustee has acquiesced in a debtor's pursuit of the estate's assets, for the Bankruptcy Code does not authorize a trustee to delegate full responsibility for his or her duties.

■ Third, although the Trustee has a colorable claim to the insurance proceeds, the Debtor does not. The Trustee's claim is not barred by the defense of recoupment, which is without merit. Recoupment is a defense involving the adjustment of the amount of the plaintiff's claim alone on a particular contract, transaction or event. *Anthem Life Insurance v. Izaguirre (In re Izaguirre)*, 166 B.R. 484, 493 (Bankr.N.D.Ga.1994). The essence of recoupment is that the claims of the parties arising from the same transaction or contract are so closely related that it would inequitable not to compute or adjust the claim of one party by subtracting the claim of the other party.

■ The Defendant's holding of funds in trust and his performance of legal services, though related activities, do not constitute the same transaction. Similarly, the fee contract obligated the Price Family to pay for legal services and delineated the scope of the Defendant's undertaking to render legal services, but it is not the source of the Debt-

or's ownership interest in the insurance proceeds. An attorney's client has a claim to the client's funds held in trust, whether or not a fee agreement speaks to that claim. Moreover, the fee agreement does not authorize an offset or otherwise provide that the amount of the Debtor's claim for the return of the proceeds is computed by deducting attorney's fees. By offsetting his fee, the Defendant violated the automatic stay, notwithstanding his lack of knowledge of the bankruptcy case. Therefore, the Trustee has a colorable claim to the insurance proceeds.[3]

■ The Debtor, however, having litigated the Defendant's right to the insurance proceeds in the U.S. District Court, has no colorable claim to those proceeds, apart from the Trustee's claim. In citing section 542 as the basis for her action, the Plaintiff acknowledges that the insurance proceeds are property of the estate.[4] Therefore, the Trustee is the real party in interest. If those proceeds were not property of the estate, the complaint would fail to state a claim under section 542, and this action would be moot.

■ The Plaintiff's lack of standing is not a superficial defect resulting from her failure to obtain a firm refusal of the Trustee to prosecute and court authorization to proceed in the name of the Trustee. Had the Plaintiff asked the court to authorize her to prosecute this claim on behalf of and in the name of the Trustee, the court would not have permitted her to do so. The Debtor has not shown that she would suffer any injury if the Trustee failed or refused to recover the proceeds. A party seeking to invoke Article III standing must demonstrate, among other things, that the party has suffered, or is threatened with, " 'injury in fact,' by which we mean an invasion of a legally protected interest that is '(a) concrete

3. Notwithstanding his colorable claim, the Trustee appeared in the interpleader action and had the opportunity to litigate the issue of the validity and perfection of the Defendant's lien. He is collaterally estopped to raise that issue. *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir. 1984). Hence, recovery of the proceeds would be futile.

4. The Plaintiff also argued in a brief that the Trustee abandoned the claim to the insurance proceeds. The Trustee filed a notice of proposed abandonment, but only as to the Debtor's residence. Abandonment must be clear and unequivocal. *Bankruptcy Estate of B.J. McAdams, Inc. v. Ralston Purina Co.*, 154 B.R. 809, 811 (N.D.Ga.1993). The Trustee has not abandoned the turnover action. Accordingly, the cause of action to recover those funds remains property of the estate.

and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" (Citation omitted). *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Fla.,* —— U.S. ——, ——, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993).

To show an actual or threatened injury sufficient to support standing to bring a turnover action, a debtor must have a pecuniary interest that would be damaged by the failure of the estate to recover the debtor's property from a third party. In three situations a debtor might assert direct or indirect injury to such an interest: (1) where recovery of property would result in the payment in whole or in part of a nondischargeable claim; (2) where recovery of property would create a surplus after payment of all claims; and (3) where the debtor could exempt all or a portion of the property recovered.

1. *Reduction of a Nondischargeable Claim.* The Plaintiff does not contend that recovery of the insurance proceeds retained by the Defendant would enable the Trustee to pay down or pay off a nondischargeable claim. Had she made such a contention, it would not have merit. Such an interest, "although indirectly pecuniary, is 'remote and consequential rather than direct and immediate.'" *Slack v. St. Paul/Seaboard Surety Co. (In re Slack),* 164 B.R. 19, 23 (Bankr.N.D.N.Y.1994), *quoting Sec. & Exchange Comm'n v. Sec. Northwest, Inc.,* 573 F.2d 622, 626 (9th Cir.1978).

2. *Return of a Surplus to the Debtor.* In the rare case in which recovery of property in a turnover action would enable the trustee to pay all claims in full and would leave a surplus, a debtor might argue that he or she should be authorized to prosecute the action, if the trustee unjustifiably refused to do so. This is not such a case. There are presently no assets in the Debtor's estate to pay creditors' unsecured claims. The Defendant has filed a claim to which the Debtor has not objected either in this adversary

proceeding or in the main bankruptcy case. If the Defendant were required to turn the proceeds over to the Trustee, his claim alone would exceed the amount of the settlement proceeds. Hence, the Debtor cannot show that any surplus would be returned to her.[5] For that reason, she has no colorable claim or interest in the insurance proceeds and does not "fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. at 3324.

3. *Recovery of Exempt Property.* A Chapter 7 debtor might also assert standing based on injury that would result if the trustee fails to recover property of the estate that the debtor could exempt. The Debtor contends in her brief in support of her summary judgment motion that she is entitled to the insurance proceeds as exempt property. In a list of exemptions attached as a schedule to her petition, the Debtor claimed all of the insurance proceeds paid to the Defendant as exempt property. The Debtor had no colorable right to the claimed exemption under Georgia law, but the Chapter 7 Trustee failed to object to that claimed exemption within the 30–day period provided in Fed.R.Bankr.P. 4003(b). In the absence of a timely challenge, a trustee may not contest the validity of a claimed exemption, even if the debtor has no colorable right to claim it. *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

Not surprisingly, the Bankruptcy Code speaks directly to the standing issue where exemptions are at stake. Under section 522(g), a debtor may exempt property that a trustee recovers pursuant to sections 510(c)(2), 542, 543, 550, 551 or 553. Section 522(h) gives the debtor standing to bring certain types of avoidance actions if the trustee fails to act. It states:

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection

---

5. The right to receive a surplus must be distinguished from a right to exempt property that would otherwise be distributed to creditors. A debtor's right to maintain a turnover action to recover exempt property is discussed below.

(g)(1) of this section if the trustee had avoided such transfer, if—

 (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

 (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

Section 542, listed in section 522(g), is omitted from section 522(h) because section 522(h) is concerned with actions to avoid transfers, while section 542 deals with the turnover of property of the estate. The Plaintiff does not seek to avoid a transfer.

 Only a bankruptcy trustee holds the string to property recoverable through avoidance proceedings. A debtor cannot recover the exempt portion of that property outside of bankruptcy and use it to obtain a fresh start. Section 522(h) recognizes the dilemma and empowers the debtor to pursue the trustee's avoidance claim for the debtor's benefit.

 By contrast, both the debtor and the trustee hold the string on property of the estate not turned over for administration in the bankruptcy case. If the trustee pulls the property into his or her possession, the debtor nonetheless continues to hold the string, which is cut only if the trustee fully administers the property. A trustee releases his or her hold on the string to property that is either abandoned by the trustee or not administered at the time the bankruptcy case is closed. That property then revests in the debtor, who, subject to the rights of a third party with a valid, perfected lien, may pull the string to obtain possession. For this reason, the failure of a third party to turn over property to the trustee does not cause injury to a debtor who might otherwise exempt that property.

 To the extent timing is important to a debtor, that debtor may move for an order requiring the trustee to abandon the property, if the trustee fails to pull the string. To the extent the third party unlawfully resists the debtor's demand for turnover of unadministered or abandoned property, the debtor may regain control of the property by enforcing rights under section 362 or section 524.

Congress did not specifically include an action under section 542 in the list of actions that a debtor may bring under section 522(h). This court will not imply one.

 In summary, the trustee has the duty to pursue turnover actions in Chapter 7 cases. A debtor lacks standing to initiate such an action on a unilateral basis. There is no evidence that the Trustee in this case unjustifiably refused to bring a turnover action against the Defendant. The Plaintiff did not obtain court approval to sue either in her own name or in the name of the Trustee. Had the Plaintiff sought leave to prosecute the turnover action, the court would not have authorized her to do so, because she can show no injury arising from the Trustee's failure to prosecute the action. Section 522(h) does not authorize a debtor to initiate and prosecute a turnover action. For these reasons, the Plaintiff does not have standing to bring this action.

Accordingly, it is

ORDERED that the motion of the Defendant to amend his answer is denied as moot, and it is

FURTHER ORDERED that the motion of the Plaintiff for summary judgment is DENIED and the motion of the Defendant for summary judgment is GRANTED and that this case is DISMISSED. The court will enter a separate judgment.