**In re Kenneth F. HARPER
and Janet R. Harper.**

**Quadrangle Enterprise, Inc., Plaintiff**

**v.**

**Kenneth F. Harper, Defendant.**

**Bankruptcy No. 4:06–bk–15392E.
Adversary No. 4:07–ap–1074.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 6, 2007.

Perry Y. Young, Jensen Young & Houston, PLLC, Benton, AR, for Plaintiff.

Pamela G. Perry, Attorney at Law, Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

AUDREY R. EVANS, Bankruptcy Judge.

Quadrangle Enterprise, Inc. ("**Quadrangle**" or "**Plaintiff**"), filed a *Complaint to Determine Dischargeability* under 11 U.S.C. § 523(a)(6) against Defendant Kenneth Harper (the "**Debtor**") on March 23, 2007. The Debtor filed an *Answer to Complaint to Determine Dischargeability, Motion to Dismiss and Counterclaim* on April 20, 2007. Plaintiff filed a *Response to Motion to Dismiss* on May 8, 2007. The Debtor's Motion to Dismiss was based on the Plaintiff's failure to file a Corporate Ownership Statement, which the Plaintiff subsequently filed. The Court issued an *Order Denying Motion to Dismiss for Failure to File Corporate Ownership Statement* on May 11, 2007. Plaintiff also filed a *Reply to Counterclaim* on May 8, 2007, which seeks dismissal of Debtor's Counterclaim for failure to state facts upon which relief may be granted.

On May 29, 2007, Plaintiff filed *Petitioner's Motion for Summary Judgment* ("**Motion for Summary Judgment**"), *Brief in Support of Motion for Summary Judgment,* and *Petitioner's Statement of Undisputed Facts Submitted in Support of Summary Judgment.* The Debtor filed a *Response to Motion for Summary Judgment* and *Brief in Support of Response to Motion for Summary Judgment* on June 28, 2007. Plaintiff filed *Petitioner's Reply in Further Support of Motion for Summary Judgment* and *Reply Brief in Further Support of Motion for Summary Judgment* on July 9, 2007. On August 8, 2007, Debtor filed *Respondent's Response to Petitioner's Reply in Further Support of Motion for Summary Judgment and Respondent's Brief in Support.*

No request has been made for a hearing in this matter, and upon submission of the last responsive pleading, the Court took the matters under advisement. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

## I. PLAINTIFF'S MOTION TO DISMISS DEBTOR'S COUNTERCLAIM.

The Debtor filed a Counterclaim alleging that Plaintiff has failed to provide an accounting of a trust created by the parties. Debtor asserts this trust account provides the funds for a set-off. The Plaintiff moves to dismiss the counterclaim for failure to state facts upon which relief may be granted, in that Debtor lacks standing to sue for certain trust funds which Debtor acknowledges are property of his bankruptcy estate. Plaintiff is correct. Debtor lacks standing to recover property on behalf of his estate—the cause of action belongs to the chapter 7 Trustee. "The trustee in bankruptcy succeeds to all causes of action held by the debtor at the time that a bankruptcy petition is filed." *Miller v. Shallowford Community Hosp., Inc.,* 767 F.2d 1556, 1559 (11th Cir.1985). "A Chapter 7 trustee is the estate's sole representative.... Therefore, a debtor may not unilaterally prosecute a claim that belongs to the estate." *Price v. Gaslowitz (In re Price),* 173 B.R. 434 (Bankr.N.D.Ga. 1994) (citing *Miller,* supra). For a party

in interest other than the trustee to have standing to prosecute a claim belonging to the estate, bankruptcy courts generally require "that the claim be colorable, that the debtor-in-possession have refused unjustifiably to pursue the claim, and the [party-in-interest] first receive leave to sue from the bankruptcy court." *Price,* 173 B.R. at 440. Debtor has not moved for leave to sue in place of the trustee. Accordingly, the Court dismisses the Debtor's counterclaim without prejudice to the Trustee filing an action on this claim, or the Debtor filing such an action if the Trustee refuses to do so, provided the Debtor first obtains leave of Court to do so.

## II. *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.*

The following exhibits were attached to Plaintiff's Motion for Summary Judgment, all of which relate to a civil lawsuit filed by Plaintiff against Debtor in Saline County Circuit Court (CV–2005–214–3):

(1) Affidavit of Edward O. Fryar in Support of Motion for Summary Judgment (**Exhibit "A"**);

(2) Plaintiff's Complaint (**Exhibit "B"**);

(3) Plaintiff's Amended Complaint (**Exhibit "C"**);

(4) Jury Instructions (**Exhibit "D"**);

(5) Jury Questionnaire (**Exhibit "E"**);

(6) Judgment (**Exhibit "F"**);

(7) Motion for Continuance filed by Defendant Kenneth Harper (**Exhibit "G"**);

(8) Order Denying Motion for Continuance (**Exhibit "H"**);

(9) Motion for Continuance filed by Defendant Kenneth Harper (**Exhibit "I"**);

(10) Answer to Cross–Complaint filed by Defendant Kenneth Harper (**Exhibit "J"**);

(11) Order of Contempt (**Exhibit "K"**);

(12) Plaintiff's Complaint regarding an injunction filed by Plaintiff against Defendant in Saline County Circuit Court (CV–2005–213–1) (**Exhibit "L"**);

(13) Third Agreed Order regarding injunction matter (**Exhibit "M"**);

(14) Consensual Lien filed in the injunction matter (**Exhibit "N"**);

(15) Amended Complaint filed in the injunction matter (**Exhibit "O"**); and

(16) Accounting of Sums Deposited Pursuant to Third Agreed Order (**Exhibit "P"**).

The following exhibits were attached to Plaintiff's Reply:

(16) Reply Affidavit of Edward O. Fryar in Further Support of Motion for Summary Judgment (**Exhibit "Q"**); and

(17) Trial Transcript of Quadrangle V. Harper, et al., Saline CV–2004–214–3 (**Exhibit "R"**) (certain portions of the lengthy transcript are admittedly omitted by the Plaintiff and discussed in Exhibit "Q").

### FACTS[1]

The Debtor, Mr. Harper, is president and 100% shareholder of an Arkansas corporation named Real Estate Development,

---

**1.** The facts listed herein were either specifically admitted by Debtor in a responsive pleading, or were substantiated by unrefuted documentary evidence submitted in this case

Inc. ("REDI"). Ed Fryar is President of Quadrangle Enterprises, Inc. ("Quadrangle") and a business partner in Saline River LLC ("Saline River"), both Arkansas corporations. In January, 2003, for consideration as recited in an agreement between Saline River and REDI, REDI received approximately 47 acres of real property from Saline River (Quandrangle's predecessor in interest). About this same time, Saline River deeded approximately 1,200 acres of surrounding property to Quadrangle.

In the summer of 2003, Debtor, acting on behalf of REDI, hired Ron Shamlin, Jr. d/b/a Arkansas Timber & Logging and C & L Logging ("Arkansas Timber") to log timber on REDI's land. On or about the same time that this logging took place, Arkansas Timber logged several acres of Quadrangle's property, which is contiguous to that owned by REDI.

On March 8, 2004, Quadrangle filed a Complaint in the Saline County Circuit Court (case number CV2004–214–3) (the "State Court Case") against the Debtor, REDI, and Ron Shamlin d/b/a Arkansas Timber. The Complaint sought damages for Debtor's alleged trespass and malicious conversion of timber on approximately 30 acres of Plaintiff's land. Specifically, Plaintiff asserted that the Debtor, acting on behalf of REDI, hired Arkansas Timber to cut timber on REDI's own lands, and that this agreement became a collusive effort to harvest and convert timber from Quadrangle's land.

A jury trial was held August 8 through August 10, 2006, before Circuit Judge Grisham A. Phillips. Perry Young appeared on behalf of Quadrangle; Cecily Skarta represented Arkansas Timber; and the Debtor appeared *pro se*. While the jury did not find that the defendants acted in collusion, the jury did return a verdict in favor of Quadrangle finding that the Debtor was guilty of trespass and conversion. Based on these findings, the jury awarded Quadrangle compensatory, treble and punitive damages against the Debtor.

### Jury Instructions, Jury Questionnaire, and Judgment

There are three exhibits relating to the State Court Case which deserve specific attention: (1) the Jury Instructions (**Exhibit "D"**); (2) the Specific Verdict Form (**"Jury Questionnaire"**), which was provided to the jury as a questionnaire (**Exhibit "E"**); and (3) the Judgment that was entered in the State Court Case (**Exhibit "F"**). Because these documents are of such importance in this decision, they are discussed and provided, in part, below.

(1) *Jury Instructions.*

In the State Court Case, the jury was given oral instructions as agreed upon by the parties. Specifically, the jury received the following instruction derived from AMI 205,[2] which instruction was not objected to by any of the Defendants therein:

QUADRANGLE ENTERPRISES, INC. CLAIMS DAMAGES FROM

---

or unrefuted testimony in the State Court case which has been made a part of this record. While the Debtor did not stipulate to the Plaintiff's Statement of Undisputed Facts, the Debtor made no allegation that the documents submitted by Plaintiff were not authentic; nor has Debtor submitted any other versions of such documents to show they are not authentic. Further, while Debtor asserts a general denial to facts Plaintiff relies upon in support of its Motion for Summary Judgment, Debtor has failed to specify exactly which facts he disputes.

**2.** References to AMI refer to the Arkansas Model Jury Instructions, Civil.

RON SHAMLIN, JR., RON SHAM-LIN, SR. D/B/A/ ARKANSAS TIMBER & LOGGING, KENNETH HARPER, AND REAL ESTATE DEVELOP-MENT, INC. BASED ON **TRESPASS,** AND HAS THE BURDEN OF PROV-ING EACH OF THREE ESSENTIAL PROPOSITIONS BY A PREPONDER-ANCE OF THE EVIDENCE:

FIRST, THAT IT HAS SUSTAINED DAMAGES;

SECOND, THAT ALL OR ANY OF THE DEFENDANTS **INTENTION-ALLY ENTERED ON THE PLAIN-TIFF'S PROPERTY;**

AND THIRD, THAT SUCH ENTRY WAS A PROXIMATE CAUSE OF THE DAMAGES OF QUADRANGLE ENTERPRISES, INC.

QUADRANGLE ENTERPRISES, INC. CLAIMS DAMAGES FROM RON SHAMLIN, JR., RON SHAM-LIN, SR. D/B/A/ ARKANSAS TIMBER & LOGGING, KENNETH HARPER, AND REAL ESTATE DEVELOP-MENT, INC. BASED ON **CONVER-SION OF TIMBER,** AND HAS THE BURDEN OF PROVING EACH OF THREE ESSENTIAL PROPOSI-TIONS BY A PREPONDERANCE OF THE EVIDENCE:

FIRST, THAT IT HAS SUSTAINED DAMAGES;

SECOND, THAT THE DEFEN-DANTS, OR SOME OF THEM, **IN-TENTIONALLY DEPRIVED PLAIN-TIFF QUADRANGLE OF ITS PROPERTY RIGHTS;** AND

THIRD, THAT SUCH ACTION WAS A PROXIMATE CAUSE OF THE DAMAGES OF QUADRANGLE.

QUADRANGLE ENTERPRISES, INC. CLAIMS DAMAGES FROM RON SHAMLIN, JR., RON SHAM-LIN, SR. D/B/A/ ARKANSAS TIMBER & LOGGING, KENNETH HARPER, AND REAL ESTATE DEVELOP-MENT, INC. BASED ON **MALI-CIOUS CONVERSION OF TIMBER,** AND HAS THE BURDEN OF PROV-ING EACH OF THREE ESSENTIAL PROPOSITIONS BY BOTH A PRE-PONDERANCE OF THE EVIDENCE AND BY CLEAR AND CONVINCING EVIDENCE:

FIRST, THAT IT HAS SUSTAINED DAMAGES;

SECOND, THAT THE DEFEN-DANTS, OR SOME OF THEM, **ACT-ED WITH INTENTIONAL AND DE-LIBERATE DISREGARD FOR THE PLAINTIFF'S PROPERTY RIGHTS;**

AND THIRD, THAT SUCH INTEN-TIONAL ACTION WAS A PROXI-MATE CAUSE OF THE DAMAGES OF QUADRANGLE.

(Emphasis supplied).

Regarding the level of intent required for trespass, the jury was instructed the following based on the Restatement of Torts (2d) §§ 158, 164.

A PERSON HAS A DUTY TO RE-FRAIN FROM GOING UPON LANDS HE DOES NOT LAWFULLY POS-SESS. A PERSON FAILS THAT DUTY WHEN THEY ENTER UPON LANDS THAT THEY DO NOT LAW-FULLY POSSESS.

IN THIS CASE, THE PLAINTIFF CLAIMS THE DEFENDANTS ACT-ED "INTENTIONALLY" REGARD-ING THEIR TRESPASS TO LAND. THE INTENT NECESSARY TO COMMIT A TRESPASS IS THAT TO BE ON A PARTICULAR PIECE OF

LAND THAT DOES NOT BELONG TO YOU. **IN THIS CONTEXT, YOU DO NOT NEED TO SPECIFICALLY INTEND TO INVADE, OR TO BE AWARE OF WHO THE TRUE OWNER IS, NOR DO YOU NEED TO INTEND TO CAUSE HARM.** ALSO, IT IS NO EXCUSE THAT YOU THOUGHT YOU WERE INVITED TO BE ON THAT LAND BY WHOM YOU THOUGHT TO BE ITS OWNER. THAT IS, YOU ARE TO ASSESS DAMAGES FOR TRESPASS AGAINST THE PARTIES YOU FIND RESPONSIBLE IF YOU FIND THAT DEFENDANT HARPER, DEFENDANT SHAMLIN, OR BOTH INTENDED TO BE ON THE LANDS THEY WERE ON, AND THAT INTRUSION PROXIMATELY LED TO THE DAMAGE OF THE PLAINTIFF.

(Emphasis added.)

Regarding the intent required for conversion, the jury was instructed the following, taken from *Tackett v. McDonald's Corp.*, 68 Ark.App. 41, 3 S.W.3d 340 (1999):

PLAINTIFF QUANDRANGLE BEARS THE BURDEN OF PROVING THAT THE DEFENDANTS, OR SOME OF THEM, INTENTIONALLY CONVERTED ITS PROPERTY, IN THIS CASE, ITS TIMBER. CONVERSION IS THE EXERCISE OF DOMINION OVER PROPERTY IN VIOLATION OF THE RIGHTS OF THE OWNER ENTITLED TO POSSESSION; CONVERSION CAN ONLY RESULT FROM CONDUCT INTENDED TO AFFECT PROPERTY. **THE INTENT REQUIRED IS NOT CONSCIOUS WRONGDOING, BUT RATHER, AN INTENT TO EXERCISE DOMINION OR CONTROL OVER THE GOODS THAT IS IN** FACT **INCONSISTENT WITH QUANDRANGLE'S RIGHTS.**

(Emphasis added).

The jury was instructed as to AMI 1101 for the definition of willful and wanton conduct, which instruction was not objected to by any of the Defendants:

WHEN I USE THE EXPRESSION **"WILLFUL OR WANTON CONDUCT,"** I MEAN A COURSE OF ACTION WHICH SHOWS AN **ACTUAL OR DELIBERATE INTENTION TO HARM,** OR WHICH, IF NOT INTENTIONAL, SHOWS AN UTTER INDIFFERENCE TO, OR CONSCIOUS DISREGARD FOR, THE SAFETY OF OTHERS.

(Emphasis supplied).

Finally, AMI 2218, and Ark.Code Ann. §§ 16–55–206, –207 were recited on the standard for punitive damages, which again was not objected to by any of the Defendants:

IN ADDITION TO COMPENSATORY DAMAGES FOR ANY ACTUAL LOSS THAT PLAINTIFF QUADRANGLE MAY HAVE SUSTAINED, QUADRANGLE ASKS FOR **PUNITIVE DAMAGES** FROM DEFENDANT KENNETH HARPER AND HIS EMPLOYER REAL ESTATE DEVELOPMENT, INC., AND FROM DEFENDANT RON SHAMLIN, JR. AND FROM HIS EMPLOYER, ARKANSAS TIMBER & LOGGING. PUNITIVE DAMAGES MAY BE IMPOSED TO PUNISH A WRONGDOER AND TO DETER OTHERS FROM SIMILAR CONDUCT. IN ORDER TO RE[C]OVER PUNITIVE DAMAGES FROM ANY OR ALL OF THE DEFENDANTS, PLAINTIFF QUADRANGLE HAS THE BURDEN OF

PROVING BY **CLEAR AND CON-VINCING EVIDENCE** EITHER:

THAT THE INDIVIDUAL DEFENDANT WHOSE LIABILITY YOU ARE CONSIDERING **KNEW OR OUGHT TO HAVE KNOWN**, IN THE LIGHT OF THE SURROUNDING CIRCUMSTANCES, THAT HIS **CONDUCT WOULD NATURALLY AND PROBABLY RESULT IN DAMAGE,** *AND* THAT HE CONTINUED SUCH [CON]DUCT WITH **MALICE** *OR* IN **RECKLESS DISREGARD** OF THE CONSEQUENCES *FROM WHICH MALICE MAY BE INFERRED,*

OR, SECOND,

THAT THE INDIVIDUAL DEFENDANT WHOSE LIABILITY YOU ARE CONSIDERING **INTENTIONALLY PURSUED A COURSE OF CONDUCT FOR THE PURPOSE OF CAUSING DAMAGE,**

OR BOTH.

YOU ARE NOT REQUIRED TO ASSESS PUNITIVE DAMAGES AGAINST EITHER RON SHAMLIN, JR. AND HIS EMPLOYER, OR AGAINST KENNETH HARPER AND HIS EMPLOYER, BUT YOU MAY DO SO IF JUSTIFIED BY CLEAR AND CONVINCING EVIDENCE.

(Emphasis supplied).

(2) *Jury Questionnaire.*

The jury retired to its deliberations with the Specific Verdict Form. It provides, in part:

1. Did the Plaintiff Quadrangle Enterprises, Inc. demonstrate by a preponderance of the evidence that Kenneth Harper, individually and as agent of Real Estate Development, Inc. was responsible in whole or in part for damages caused by the **trespass** onto Plaintiff's lands, including the cutting and **conversion of the Plaintiff's timber?**

ANSWER: **YES**

. . .

3. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the **value of the harvested and converted timber** east of the Real Estate Development, Inc. property?

ANSWER: **$11,500**

4. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the **costs of remediation** of that property from which timber had been harvested (east of the Real Estate Development, Inc. property), **and/or** by the **lessening of the value of that property** as a result?

ANSWER: **$12,000**

5. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the **value of the harvested and converted timber** as it stood "on the stump" south of the Real Estate Development, Inc. property?

ANSWER: **$1,000**

6. Did Kenneth Harper demonstrate by a preponderance of the evidence that he reasonably had **probable cause to believe that the Plaintiff's lands were his own** or that of Real Estate Development, Inc.?

ANSWER: **NO**

. . .

8. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that Kenneth Harper and Ron Shamlin, Jr. **acted in concert in tres-**

passing onto Plaintiff's lands and converting Plaintiff's timber, **i.e.,** that they each entered into a conscious agreement to pursue a common plan or design to trespass and remove timber, and each actively took part in that common plan or design?

ANSWER: **NO**

9. If your answer to question no. 8 was in the negative, please state the **respective fault of each party** (total = 100%):

ANSWER: **85% Kenneth Harper**

**15% Ron Shamlin, Jr.**

10. Did the Plaintiff demonstrate by clear and convincing evidence that Kenneth Harper **knew or ought to have known** that his conduct would naturally and probably result in **injury or damage** *and* that he or she continued the conduct with **malice** *or* in **reckless disregard** of the consequences; *or* that he **intentionally pursued a course of conduct for the purpose of causing injury or damage?**

ANSWER: **YES**

. . .

12. If your responses to questions 10 or 11, or both, were "yes," how much in total **punitive damages** do you award the Plaintiff?

ANSWER: **$25,000**

(Emphasis added).

*(3) Judgment.*

As a result of the foregoing, on August 29, 2006, there was entered a Judgment on this verdict. It provides, in part:

. . .

NOW THEREFORE, it is hereby ADJUDGED as follows:

1. Plaintiff shall have Judgment against Defendants Ron Shamlin, Jr., Ron Shamlin, Sr. d/b/a Arkansas Timber & Logging, Kenneth Harper and Real Estate Development, Inc., jointly and severally, in the amount of $34,500.00, reflecting the jury's finding that the Defendants had converted $11,500.00 of the Plaintiffs timber from those lands east of Defendant Real Estate Development, Inc., which base amount is trebled pursuant to ACA 18–60–102 on account of the lack of good-faith belief that the lands from which timber was converted was the Defendants' own, and joint and several in light of the Court's ruling on the Plaintiff's renewed motion for partial summary judgment as to liability, and in addition, shall recover of said Defendants the sum of $1,005.00 in costs, jointly and severally.

. . .

3. Plaintiff shall furthermore have Judgment against Kenneth Harper and Real Estate Development, Inc., jointly and severally as to these two Defendants, in the amount of $38,200.00, reflecting $10,200.00 in several but not joint liability for damage to and costs of remediation of the Plaintiff's lands, as adjudicated by the jury to be eighty-five percent of a total of $12,000.00 of such costs, plus $1,000.00 in additional timber conversion to the south of Defendant's lands, as trebled, plus $25,000.00 awarded in **punitive damages** pursuant to the jury's award and finding that these Defendants **acted in wanton** *or* **malicious derogation of the Plaintiff's property rights.**

. . .

(Emphasis added).

## ISSUE PRESENTED AND PARTIES' POSITIONS

Plaintiff's Complaint alleges that the judgment obtained against the Debtor in

Saline County Circuit Court is non-dischargeable under 11 U.S.C. § 523(a)(6) as a debt for a "willful and malicious injury by the debtor to another entity." Plaintiff's Motion for Summary Judgment alleges that the doctrine of collateral estoppel applies in bankruptcy court, and that the jury's finding that the Debtor was liable for compensatory, treble, and punitive damages for trespassing on Plaintiff's land and converting timber from that land precludes the Debtor from re-litigating in bankruptcy court the issue of whether the Debtor inflicted a "willful and malicious injury" upon the Plaintiff under § 523(a)(6). For this reason, Plaintiff asserts that summary judgment is appropriate as a matter of law.

Debtor responds that summary judgment is inappropriate because the findings of the jury in the civil action are not the same as those required by § 523(a)(6), and therefore, there is a genuine issue for trial in accordance with Federal Rule of Civil Procedure 56(e). Debtor also asserts that this motion is not yet ripe for summary judgment because additional discovery is needed. Specifically, Debtor argues that the Court cannot determine the facts presented in Plaintiff's Motion for Summary Judgment because the Plaintiff has not presented the entire record of the trial court proceeding. Plaintiff included an index to the transcript provided showing that the following portions were omitted: voir dire, opening statements, pre-trial motions and opening instructions (89 pages); testimony of Harold Wilson, Marian Belt, Walter Wise (Plaintiff's damages witnesses) and Brent Faust (Shamlin Defendants' damages witnesses) (174 pages); and oral jury instructions and closing arguments (102 pages). The Debtor, however, fails to indicate exactly which portions of the omitted transcript would support his arguments. Fed. R. Civil P. 56(e) provides, in part:

> ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Nor did Debtor provide the omitted portions of the transcript to show that some material fact was contained therein. Debtor complains that the trial transcript does not include the jury instructions, yet Plaintiff represented that the jury was given the instructions provided in its Exhibit D. Debtor then acknowledges that these were the jury instructions given to the jury in his response brief (p. 5–6 of Debtor's Response Brief). Accordingly, there is no dispute that these were in fact the jury instructions given to the jury. Further, in this case, the jury instructions, interrogatories and judgment were sufficiently clear to reach a decision without studying the trial transcript. *See In re Porter*, 375 B.R. 822, 827 (8th Cir. BAP 2007) ("Although both parties ask us to review the evidence from the district court when reaching our decision, that is not part of our inquiry. We are not reviewing the propriety of that judgment. Rather we, like the bankruptcy court, must determine whether the jury verdict precluded the bankruptcy court from finding that Porter's actions were not willful and malicious. Thus, we turn to the jury's verdict and its answers to interrogatories.").

Debtor also contends that more discovery is needed on his counterclaim for an

accounting which was dismissed without prejudice in part I of this Memorandum Opinion and Order. Debtor also seeks additional discovery as to the amount of restitution Plaintiff has received from another defendant in the State Court lawsuit. However, the Court need not delay in considering Plaintiff's motion for summary judgment on those grounds because the Court is only determining whether the judgment against Debtor is excepted from discharge, not the exact amount to be collected from Debtor—if the debt is excepted from discharge, the Plaintiff may proceed to collect it in accordance with state law.

Finally, Debtor attempts to avoid the application of collateral estoppel by claiming that he was under duress during the State Court lawsuit in that he is a disabled Vietnam War veteran who suffers from post traumatic stress disorder ("PTSD"). Debtor's counsel does not set forth the nature of this duress claim, but generally claims that collateral estoppel should not apply because the Debtor was *pro se* in the State Court lawsuit and suffered from a mental illness. Debtor acknowledges that the State Court judgment is a final judgment which was not appealed. While the Debtor may have some grounds to attempt to set aside the State Court judgment in State Court, the Debtor cannot collaterally attack the State Court judgment here. *See e.g., In re Rickabaugh,* 355 B.R. 743, 755 (Bankr. N.D.Iowa 2006) ("A final, valid judgment is subject only to jurisdictional challenges, not collateral attack, even if the deciding court made a mistake. Error is to be corrected by appeal."); *Powers v. Bryant,* 309 Ark. 568, 571, 832 S.W.2d 232, 233 (1992) ("Absent allegations of fraud or lack of jurisdiction, a judgment entered by a circuit court bears presumptive verity and may not be questioned by collateral attack."). *See also* FEDERAL PROCEDURE, LAWYERS EDITION, § 51:231 (Thomson/West 2007). Further, the adequacy (or lack thereof) of Debtor's *pro se* representation does not preclude the application of collateral estoppels principles. *In re Johnson,* 2007 WL 646376, *4 (S.D.Tex.) (In footnote 2, the court also noted: "Because there is no right to counsel in civil proceedings, there is no derivative right to effective assistance of counsel in such cases."). *See also Oliver v. State,* 323 Ark. 743, 755, 918 S.W.2d 690, 696 (1996), (". . . a party appearing *pro se* is responsible for any mistakes he makes in the conduct of his trial and receives no special consideration on appeal."). Therefore, if the other elements of collateral estoppel apply, this Court must give credit to the State Court's judgment despite Debtor's assertions that he represented himself in State Court while suffering from PTSD.

## ANALYSIS

### A. Legal Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056 requires that Rule 56 of the Federal Rules of Civil Procedure be applied to adversary proceedings. Under Rule 56, summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, "all inferences to be drawn ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate when a court can conclude that no reasonable juror could find for the nonmoving party on the basis of the evidence presented in the motion and response. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *McGee v. Hester*, 724 F.2d 89, 91 (8th Cir.1983) *citing Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977).

### B. Collateral Estoppel.

■■ The doctrine of collateral estoppel may properly be applied in dischargeability proceedings under § 523 of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). The substantive law of the forum state is used in applying the collateral estoppel doctrine, giving a state court judgment preclusive effect if a court in that state would do so. *In re Scarborough*, 171 F.3d 638 (8th Cir.1999).

■ For collateral estoppel to apply in Arkansas, the following four elements must be proven by the party asserting collateral estoppel:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) the issue must have been litigated in the prior action;

(3) the issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.*, 356 Ark. 90, 146 S.W.3d 852, 855 (2004).

■ The dispute presented in this case is whether the first element is met. For the first element of collateral estoppel to be satisfied, the issue in the adversary proceeding must be the same as presented in the State Court Case. "To determine whether an issue was actually litigated and was necessary to the decision in the prior action, the court should examine the entire record of the earlier proceeding." *Id.* (citing *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *In re Lee*, 90 B.R. 202, 205–06 (Bankr.E.D.Va.1988)). " 'An issue may be 'actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation.' " *M. Kellie Beaupre McDonough v. Clifford F. Smith (In re Smith)*, 270 B.R. 544, 548 (Bankr.D.Mass. 2001). Here, the issue is whether the Debtor's actions constituting trespass and conversion of timber were willful and malicious, as required to except a debt from discharge under § 523(a)(6). Quadrangle argues that the jury instructions, jury questionnaire and judgment support a finding of willful and malicious injury on their face. The Debtor argues that the "mens rea" requirement of intent is missing from the State Court Case proceeding and the issue should therefore be tried in this Court.

### C. Willful and Malicious Injury.

■ Section 523(a)(6) provides that discharge is not available to a debtor for

any debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Eighth Circuit has determined that willful and malicious are two distinct requirements. *See In re Long,* 774 F.2d 875, 882 (8th Cir.1985); *see also In re Scarborough,* 171 F.3d 638, 641 (8th Cir.1999) ("Willful and malicious are two distinct requirements that . . . the party seeking to avoid the discharge of the debt, must prove by a preponderance of the evidence before the § 523(a)(6) exception to discharge applies.") (citing *Grogan v. Garner, supra,* 498 U.S. at 286–287, 111 S.Ct. 654).

▆▆▆ The Eighth Circuit defines the term "willful" as "deliberate or intentional." *Scarborough,* 171 F.3d at 643 (citing *In re Miera,* 926 F.2d at 744). *See also Hobson Mould Works, Inc. v. Madsen (In re Madsen),* 195 F.3d 988, 989 (8th Cir. 1999). In *Kawaauhau v. Geiger,* the Supreme Court clarified that, " . . . debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Specifically, the Court stated, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. *Id.* at 61, 118 S.Ct. 974. 'The willful injury standard is met if the injury was substantially certain to result from the debtor's conduct. *Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 852–53 (8th Cir. 1997) (quoting Restatement (Second) of Torts § 8A, cmt. b, (1965)); *Jafarpour v. Shahrokhi (In re Shahrokhi),* 266 B.R. 702, 708 (8th Cir. BAP 2001) ('mentioning the 8th Circuit's reliance on the Restatement's substantially certain language and

applying that standard).' " *In re Porter,* 375 B.R. 822, 827 (8th Cir. BAP 2007).

▆▆▆ In *Osborne v. Stage (In re Stage),* the BAP concluded, "[t]he willful element is satisfied if the injury is the result of an intentional tort. The malicious element is satisfied if, in committing the intentional tort, the perpetrator intended the resulting harm, or the harm was substantially certain or nearly certain to result." 321 B.R. 486, 493 (8th Cir. BAP 2005) (citing *Waugh v. Eldridge (In re Waugh),* 95 F.3d 706, 711 (8th Cir.1996); *Barclays American Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985)). The BAP in *Stage* also stated, "[i]ntentional harm is difficult to establish, but the likelihood of harm in an objective sense may be considered in evaluating intent. *Barclays American Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985). The mere violation of legal rights is not enough to show malice 'absent some additional aggravated circumstances.' *Id." Id.* at 493.

▆▆▆ In sum, willful refers to an intentional *injury* whereas maliciousness refers to intentional *harm. Stage,* 321 B.R. at 493 (citing *Allstate Insurance v. Dziuk (In re Dziuk),* 218 B.R. 485, 487 (Bankr. D.Minn.1998)). In *Stage,* the BAP explained the difference between injury and harm, referring to the Restatement of Torts:

The Restatement (Second) of Torts makes a distinction between injury and harm. Injury, as used in the Restatement, denotes an invasion of any legally protected interest of another. Restatement (Second) of Torts § 7(1). Comment *a* to this section clarifies this by stating " . . . there has been an invasion of a legally protected interest which, if it

were the legal consequence of a tortious act, would entitle the person suffering the invasion to maintain an action of tort". Thus willfulness means that the defendant intended the *injury*.

. . .

In the Restatement, harm (as distinguished from injury) "denote[s] the existence of loss or detriment in fact of any kind to a person resulting from any cause." Restatement (Second) of Torts § 7(2). Comment *c* clarifies this by stating that the existence of loss or detriment need not necessarily be the invasion of a legally protected interest. The Eighth Circuit's definition of malicious focuses on the resultant harm done to the creditor. *Waugh*, 95 F.3d at 711. It is the intent to cause *harm* which must exist for an injury to be malicious.

 *Id.* at 492–493. Harm does not only refer to physical injury of a person but also financial injury. *See* Restatement (Second) of Torts § 7(2), comment b. ("Thus harm, as defined in this Section, is the detriment or loss to a person which occurs by virtue of, or as a result of, some alteration or change in his person, or in physical things, and also the detriment resulting to him from acts or conditions which impair . . . his pecuniary advantage, . . ., or his other legally recognized interests."). Given these standards, the Court must determine whether the issues of willfulness and maliciousness were actually litigated and decided by the State Court case.

(1) *Willfulness.*

 The jury instructions regarding trespass and conversion clearly estab-

lish that the element of wilfulness was presented to and decided by the jury in the State Court case. The jury instruction regarding the intent necessary for a finding of trespass specifically stated, "[t]he intent necessary to commit a trespass is that to be on a particular piece of land that does not belong to you." In other words, the intent necessary is the intent to be on someone else's land, and thereby interfere with the true owner's rights. With respect to conversion, the jury was instructed that the Debtor must have had the "intent to exercise dominion or control over the goods that is in fact inconsistent with Quandrangle's rights." Finally, the jury instruction for "malicious conversion of timber" requires a finding that the Debtor "acted with intentional and deliberate disregard for the plaintiff's property rights." All of these standards describe a wilful injury—that is, the purposeful invasion of another's legally protected interests; however, these standards do not necessarily reveal the intent to cause harm. Furthermore, trespass and conversion are considered intentional torts under Arkansas law, and are therefore wilful acts. *See e.g., Security Pacific Housing Services, Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993); *Ford Motor Credit Co. v. Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979).

The State Court entered its judgment in favor of Plaintiff based on the jury's finding of conversion.[3] Accordingly, the issue of wilfulness was the same issue involved in the State Court case, it was actually litigated in the State Court case and determined by a valid and final judgment, and that determination was essential to the prior judgment. For these reasons, the Court finds that the jury's findings with

---

**3.** The Judgment did not mention trespass as a basis for the judgment although the jury had

determined that Debtor trespassed onto Plaintiff's land in its jury questionnaire.

respect to trespass and conversion establish for purposes of collateral estoppel that the Debtor's actions were wilful, but not necessarily malicious.[4] If the jury had not awarded punitive damages, there would only be a finding of wilfulness because the judgment entered was based solely on damages for conversion, and the instructions given on conversion did not require an intent to harm. However, the jury awarded Plaintiff punitive damages, and it is this award which opens the inquiry of whether the State Court judgment included a finding of maliciousness.

### (2) *Maliciousness.*

 The jury instruction on punitive damages states that the jury may award punitive damages if the plaintiff had proven by clear and convincing evidence that the Debtor "knew or ought to have known in the light of the surrounding circumstances, that his conduct would naturally and probably result in damage, *and* that he continued such [con]duct with **malice** *or* in **reckless disregard** of the consequences *from which malice may be inferred,*" or "that the individual defendant whose liability you are considering **intentionally pursued a course of conduct for the purpose of causing damage,** or both." The jury also answered "yes" to questionnaire no. 10 which asked if the Plaintiff had proven by clear and convincing evidence that Debtor "**knew or ought to have known** that his conduct would naturally and probably result in **injury or damage** *and* that he or she continued the conduct with **mal-**

ice *or* in **reckless disregard** of the consequences; *or* that he **intentionally pursued a course of conduct for the purpose of causing injury or damage?**" Although these instructions and questions contained a lot of choices regarding the Debtor's intent (as illustrated by the use of the word "or"), each option required punitive damages to be awarded only if the action was taken with either the intent to cause harm or with the knowledge that harm was substantially certain to occur. Further, since the likelihood of harm in an objective sense may be considered in evaluating intent, the Court must take into consideration the fact that in awarding punitive damages, the jury was evaluating the objective fact that Debtor had the Plaintiff's tree's cut down, which in an objective sense is more than likely to cause Plaintiff pecuniary harm. For these reasons, both the instruction and the jury's response to question no. 10 show that the issue of whether Debtor intended to cause Plaintiff harm, or that harm was substantially certain to occur as a result of his intentional actions, was litigated in the State Court case and decided by the jury. Further, the judgment reflects that punitive damages were awarded "pursuant to the jury's award and finding that these Defendants acted in wanton[5] or malicious derogation of the Plaintiff's property rights." Accordingly, the State Court judgment necessarily determined that the Debtor acted with the intent to cause Plaintiff harm. Because that issue was litigated in the prior action as shown by the jury instructions, jury questionnaire

---

4. Specific language in the jury instructions on both trespass and conversion negated a finding of willfulness on these causes of action alone. The jury instruction on trespass specifically stated that the intent to cause harm was not required, and the instruction on con-

version states that "conscious wrongdoing" is not a requirement.

5. Wanton conduct was defined in the jury instructions as a course of action showing an "actual or deliberate intention to harm."

and judgment, that issue was determined in a valid and final judgment, and the determination was essential to that judgment, the elements of collateral estoppel have been met, and this Court is precluded from deciding the issue otherwise.

### D. *Dischargeability of Treble Damages.*

■■■■ Debtor concedes that if the compensatory damages awarded in the State Court judgment are nondischargeable, the punitive damages are also nondischargeable. However, Debtor argues that the treble damages awarded by the State Court jury are dischargeable even if the underlying judgment is not. Debtor's counsel cites Collier Consumer Bankruptcy Practice Guide, ¶ 26.11, n. 20 for the proposition that the "entire amount of Petitioner's claim cannot be excepted from discharge because it includes treble damages and any finding of an exception to discharge by this Court would necessitate a recalculation of the specific damage amount to be declared non-dischargeable which is the value of the timber stolen at the time the injury occurred." Footnote 20 of Collier's ¶ 26.11 in turn cites *In re Modicue*, 926 F.2d 452 (5th Cir.1991), which held that "the appropriate measure of the non-dischargeable injury is the fair market value at the time the property was sold." 926 F.2d at 453. *Modicue*, however, concerned the unauthorized sale of collateral (a vehicle) and whether the amount held nondischargeable was limited to the value of the vehicle at the time it was wrongfully sold, or whether the amount of the entire debt on the vehicle was nondischargeable. *Modicue* in no way addressed or discussed treble damages awarded by another court. The Supreme Court has addressed this issue and determined that treble damages are encompassed by the

term "debt" as it is used in § 523(a)(2)(A) which excepts from discharge "any debt" respecting "money, property, services, or . . . credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud . . .". *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen*, the Court noted that the term "debt for" is used throughout § 523, including § 523(a)(6), and that it means " 'debt as a result of,' 'debt with respect to,' 'debt by reason of' and the like, . . ." *Id.* at 219–220, 118 S.Ct. 1212 (citations omitted). The Court concluded:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

*Id.* at 223, 118 S.Ct. 1212. The Court's reasoning applies with equal force to the exception for discharge for willful and malicious injury under § 523(a)(6). *See e.g., Duguid v. Rogers (In re Rogers)*, 193 B.R. 55 (Bankr.M.D.Fla.1996). For these reasons, the treble damages awarded Plaintiff in the State Court case are also nondischargeable.

### CONCLUSION

The Court finds that the State Court judgment necessarily determined that the Debtor willfully and maliciously injured Plaintiff such that the doctrine of Collateral Estoppel precludes this Court from finding otherwise.

Accordingly, it is hereby

**ORDERED** that *Plaintiff's Motion for Summary Judgment* is **GRANTED;** and it is further

**ORDERED** that Defendant's Counterclaim is **DISMISSED** without prejudice to the Trustee filing an action on this claim, or the Debtor filing such an action if the Trustee refuses to do so, provided the Debtor first obtains leave of Court to do so.

A final judgment in accordance with this Memorandum and Order will be entered this date.

**IT IS SO ORDERED.**